IN THE COURT OF CRIMINAL APPEALS

OF TEXAS






NO. 74,699






STEPHEN RILEY SISK, Appellant


v.


THE STATE OF TEXAS






APPEAL FROM

TARRANT COUNTY






Womack, J., delivered the opinion for a unanimous Court.



 The issue before us is whether, under the original version of Code of Criminal
Procedure article 64.05, appeal is to this court or to a court of appeals in the DNA-testing case
of a person who was sentenced to imprisonment for capital murder. We hold that such an
appeal is to the court of appeals.

The Case


 Steven Riley Sisk, who was convicted of capital murder and sentenced to imprisonment
for life in 1994, moved for DNA testing on February 28, 2003. The convicting court refused
to order testing. Sisk filed notice of appeal to this court, but the district clerk sent the notice
of appeal to the court of appeals. That court sent Sisk a letter expressing its concern that his
notice of appeal was untimely. Sisk filed a "response to the letter," in which he said, "This is
an appeal of a CAPITAL case . Thus, as a result, this Court of Appeals does not have
jurisdiction to hear this appeal." The court of appeals issued an opinion that said:

 We agreed, and  the clerk of this court informed the trial court clerk
of the error and requested the notice of appeal be forwarded to the Texas Court
of Criminal Appeals.

 Accordingly, because this court has no jurisdiction over an appeal from
a denial of a request for forensic DNA testing if the convicted person was
convicted in a capital case, see Tex. Code Crim. Proc. Ann. art. 64.05 (Vernon
Supp. 2003), we dismiss this appeal for want of jurisdiction. (1)


We docketed the appeal and ordered the parties to submit briefs on the question of our
jurisdiction.

The Statute


 The statute on which the court of appeals relied, Article 64.05, is part of Chapter 64 of
the Code of Criminal Procedure, which authorizes courts, on the motion of a convicted person,
to order forensic DNA testing of certain evidence that related to the person's offense. An act
of the 77th Legislature in 2001 created the chapter, (2) including Article 64.05:

 Art. 64.05. APPEALS. An appeal of a finding under Article 64.03 or
64.04 is to a court of appeals, except that if the convicted person was convicted
in a capital case, the appeal of the finding is a direct appeal to the court of
criminal appeals.


 In 2003, the legislature amended article 64.05 to provide that an appeal is to the Court
of Criminal Appeals "if the person was convicted in a capital case and was sentenced to death." (3)
The amendment applies only to convicted persons who submit a motion for forensic DNA
testing on or after the effective date of the amending act, (4) which was September 1, 2003. (5)
Because Sisk filed his motion before that date, the amendment does not apply to him.

Principles of Statutory Construction


 The initial question is whether Sisk, who was convicted of capital murder but not
sentenced to capital punishment, was convicted in "a capital case" within the meaning of the
2001 version of Article 64.05.

 In construing a statute, "we necessarily focus our attention on the literal text of the
statute in question and attempt to discern the fair, objective meaning of that text at the time of
its enactment." (6)

 If the plain language of a statute would lead to absurd results, or if the language
is not plain but rather ambiguous, then and only then, out of absolute necessity,
is it constitutionally permissible for a court to consider, in arriving at a sensible
interpretation, such extratextual factors as executive or administrative
interpretations of the statute or legislative history. (7)


Our "plain language" statutory interpretation also must analyze laws to avoid, when possible,
constitutional infirmities. (8)

The Ambiguity of the Statute


 In the 2001 version of Article 64.05, the term "capital case" is ambiguous because (in
brief) some cases of "capital offenses" involve "capital punishment" and some do not. Whether
"capital cases" refers to all cases of convictions for "capital offenses" or only those cases in
which "capital punishment" was imposed cannot be determined by simply examining the plain
text of the 2001 version of article 64.05.

 When Article 64.05 became effective on April 5, 2001, there were two capital offenses
in our law, as there are today: "capital murder" (9) and "capital sabotage." (10) Capital murder was,
and is, punishable by death or imprisonment for life. (11) Capital sabotage was, and is, punishable
by death or imprisonment for life or a term of not less than two years. (12) Therefore a conviction
of a capital offense might or might not include a sentence to capital punishment.

Usage in the Code of Criminal Procedure


 Most articles of the Code of Criminal Procedure that use the term "capital case" or a
similar term specifically distinguish cases of capital felony in which there is not (or will not
be) a death penalty from those in which the death penalty is being sought or has been
imposed. (13)

 Other articles use the term "capital cases" without distinguishing between death-penalty
and non-death-penalty prosecutions, but they speak only to procedures before the point at
which trial by jury begins or is waived. (14) At such pre-trial stages, every accusation of a capital
felony has the potential for a death penalty. These pre-trial statutes are thus different from
Article 64.05, which applies only to a post-conviction proceeding in which it is definitely
known whether a person has been sentenced to death or to some other punishment.

 Only two articles of the Code of Criminal Procedure, other than Article 64.05, use the
undifferentiated term "capital case" to refer to a case after the trial is over. One is Article
44.251, the catchline of which is, "Reformation of Sentence in Capital Case." It speaks to only
a case which there was a sentence of death. (15) The other is Article 48.01, which says, "The
Governor shall have the power to grant one reprieve in any capital case for a period not to
exceed 30 days." This surely refers to cases in which the death penalty was assessed, and not
to other cases of capital offenses in which a term of imprisonment was imposed. The language
was enacted in 1965 to replace an article that previously had authorized the Governor to "to
reprieve and delay the execution of the sentence of death." (16) These post-conviction articles'
usage of "capital case" to refer to a case in which the death penalty was assessed suggests that
the term "capital case" should have a similar meaning in former Article 64.05.

Constitutional Considerations


 We have held that a DNA-testing appeal is a "criminal case" within the meaning of the
grant of jurisdiction to this court in Article V, section 5 of the Constitution, and that we had
jurisdiction of such an appeal from a person who had been convicted of capital murder and
sentenced to death. (17) There is specific language in the Constitution about the jurisdictions of
this court and the court of appeals over appeals in a capital case.

 Between 1876 and 1981, jurisdiction of appeals in criminal cases was exclusively in
this court (or its predecessor, the Court of Appeals). The Constitution was amended in 1981
to give the intermediate courts of appeals jurisdiction of appeals in some criminal cases, while
retaining this court's exclusive appellate jurisdiction in others. The jurisdictional distinction
is whether a death penalty has been assessed. "The appeal of all cases in which the death penalty
has been assessed shall be to the Court of Criminal Appeals. The appeal of all other criminal
cases shall be to the Courts of Appeal [sic], as prescribed by law." (18) (Another article of the
Constitution, which gives the Court of Criminal Appeals jurisdiction of appeals from denial
of bail in certain non-capital cases, makes a constitutional exception to the general
constitutional provision.) (19)

 As we have said, the appeal in a DNA-testing case is "a criminal case" as the term is
used in the jurisdictional provisions of the Constitution. (20) To construe "a capital case" in the
original version of Article 64.05 to mean an appeal in a DNA-testing case by a person against
whom a death penalty had not been assessed would put the language of the statute in
contradiction to the language of the Constitution. It would have the statute prescribe that the
appeal in a criminal case in which the death penalty had not been assessed should not be to the
court of appeals. It is desirable to avoid a construction of the statute that would raise such a
constitutional question.

Conclusion


 We hold that the term "a capital case" in former Article 64.05 means a case in which
a convicted person was sentenced to death.

 We order that this appeal be transferred to the Court of Appeals for the Second Court
of Appeals District.


En banc.

Delivered April 7, 2004.

Publish.
1. Sisk v. State, No. 02-03-00160-CR (Tex. App. -- Fort Worth May 29, 2003) (not
designated for publication).
2. See Act of April 5, 2001, 77th Leg., R.S., ch.2, § 2, 2001 Tex. Gen. Laws 2, 2.
3. Act of May 9, 2003, 78th Leg., R.S., ch. 1011, § 5, 2003 Tex. Gen. Laws 16, 16-17.
4. Id., § 8, 1993 Tex. Gen. Laws, at 17.
5. Id., § 9, 1993 Tex. Gen. Laws, at 17.
6. Boykin v. State, 818 S.W.2d 782, 785 (Tex. Cr. App. 1991).
7. Id., at 785-86 (footnote omitted).
8. Lebo v. State, 90 S.W.3d 324, 326 (Tex. Cr. App. 2002).
9. See Tex. Penal Code § 19.03.
10. See Tex. Gov't Code § 557.012 (Act of May 22, 1993, 73rd Leg., R.S., ch. 268, § 1,
sec. 557.012, 1993 Tex. Gen Laws 583, 615), replacing Texas Communist Control Act, 52nd Leg.,
R.S., ch. 8, § 5, 1951 Tex. Gen. Laws 10, 11 (formerly compiled in article 6889-3, § 5 of Vernon's
Annotated Revised Civil Statutes of the State of Texas (West 1960)).
11. See Tex. Penal Code §§ 12.31 (prescribing punishments for a capital felony) & 19.03(b)
("An offense under this section is a capital felony").
12. Tex. Gov't Code § 557.012(b).
13. See Tex. Code Crim. Proc. arts. 1.13 (differentiating waiver of trial by jury in "a capital
felony" in which the State seeks the death penalty from one in which it does not); 26.04 (appointment of
counsel in "capital cases in which the death penalty is sought"); 26.052 (appointment of counsel in
"cases in which the death penalty is sought,"and using terms "capital cases in which the death penalty is
sought," "first degree or capital felonies," "death penalty cases," "a capital felony case  unless the
state gives notice in writing that the state will not seek the death penalty," "convicted of a capital felony
and sentenced to death," "after a death sentence is imposed in a capital felony case"); 34.04 (notice of
jury list in "a capital case in which the state seeks the death penalty"); 35.13 (passing juror for challenge
in "a capital case in which the state has made it known it will seek the death penalty"); 35.15 (number
of peremptory challenges in "capital cases in which the State seeks the death penalty" and in "non-capital felony cases and in capital cases in which the State does not seek the death penalty");
35.16(b)(1) (juror's conscientious scruples in "a capital case, where the State is seeking the death
penalty"); 35.17(2) (voir dire examination in "a capital felony case in which the State seeks the death
penalty"); 35.25 (making peremptory challenge in "non-capital cases and in capital cases in which the
State's attorney has announced that he will not qualify the jury for, or seek the death penalty");
35.26(b) (alternate jurors in "a capital case in which the state seeks the death penalty"); 36.29(b)
(same); 37.071(a) (sentencing in "a capital felony case in which the state does not seek the death
penalty"); 37.0711, §2 (same); 37.071(b) (punishment stage in trial for "a capital offense in which the
state seeks the death penalty"); 37.0711, § 3(a)(1) (same).
14. See id., arts. 1.07 (all prisoners bailable unless for "capital offenses" where proof is evident);
16.15 (magistrate may not admit to bail in "capital cases" where the proof is evident); 23.15 & 23.16
(confinement after arrest under a capias in "a capital case"); 26.05(d) (reimbursement of appointed
counsel's expenses in "a noncapital case"); 26.15 (same proceeding to correct defendant's name in
indictment in any case as in "capital cases"); 29.12 (bail after continuances in "a capital case"); 34.01
(special venire in "a capital case"); 44.35 (bail pending appeal in habeas corpus proceeding, except in
"capital cases where the proof is evident").
15. "(a) The court of criminal appeals shall reform a sentence of death to a sentence of
confinement in the institutional division of the Texas Department of Criminal Justice for life if the court
finds that there is insufficient evidence to support an affirmative answer to an issue submitted to the jury
under Section 2(b), Article 37.071, or Section 3(b), Article 37.0711, of this code or a negative answer
to an issue submitted to a jury under Section 2(e), Article 37.071, or Section 3(e), Article 37.0711, of
this code.


 "(b) The court of criminal appeals shall reform a sentence of death to a sentence of confinement
in the institutional division of the Texas Department of Criminal Justice for life if:


 "(1) the court finds reversible error that affects the punishment stage of the trial other
than a finding of insufficient evidence under Subsection (a) of this article; and


 "(2) within 30 days after the date on which the opinion is handed down, the date the
court disposes of a timely request for rehearing, or the date that the United States Supreme
Court disposes of a timely filed petition for writ of certiorari, whichever date is later, the
prosecuting attorney files a motion requesting that the sentence be reformed to confinement for
life.


 "(c) If the court of criminal appeals finds reversible error that affects the punishment stage of the
trial only, as described by Subsection (b) of this article, and the prosecuting attorney does not file a
motion for reformation of sentence in the period described by that subsection, the defendant shall
receive a new sentencing trial in the manner required by Article 44.29(c) of this code." Tex. Code
Crim. Proc. art. 44.251.
16. See Tex. Code Crim. Proc. art. 956 (1925).
17. See Kutzner v. State, 75 S.W.3d 427, 429-32 (Tex. Cr. App. 2002).
18. Tex. Const. art. V, § 5(b) (emphasis added).
19. See Tex. Const. art. I, § 11a.
20. See Kutzner v. State, supra note 17.