Ronald Juron **BREWER**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 09–04–220–CR.

Court of Appeals of Texas, Beaumont.

Submitted on May 31, 2004.

Decided Aug. 11, 2004.

---

Douglas M. Barlow, Beaumont, for appellant.

Tom Maness, Criminal Dist. Atty., Beaumont, Wayln G. Thompson, Asst. Criminal Dist. Atty., Beaumont, for state.

Before McKEITHEN, C.J., BURGESS, and GAULTNEY, JJ.

## OPINION

PER CURIAM.

This is a DNA testing case.[1] In September 1991, a Jefferson County jury found appellant, Ronald Juron Brewer, guilty of capital murder. As Brewer was sixteen years' old on the date of the offense, he was not subject to the death penalty. See Tex. Pen.Code Ann. § 8.07(c) (Vernon Supp.2004); Brewer v. State, No. 09–91–223 CR (Tex.App.-Beaumont 1992, pet. ref'd) (not designated for publication).

On November 19, 2002, Brewer filed a motion for post-conviction DNA testing pursuant to Chapter 64 of the Texas Code of Criminal Procedure. An evidentiary hearing was held and the trial court denied the motion. Relying on language contained in article 64.05, because Brewer's underlying conviction was for capital murder, he appealed the trial court's denial to the Court of Criminal Appeals. In Sisk v. State, 131 S.W.3d 492, 494–97 (Tex.Crim. App.2004), the Court of Criminal Appeals found article 64.05 to be ambiguous, and found the Legislature did not intend Chapter 64 DNA appeals in "capital cases" to be filed in the Court of Criminal Appeals unless the defendant is assessed the death penalty. Because of its holding in Sisk, the Court of Criminal Appeals held it had no jurisdiction over Brewer's DNA appeal and transferred the appeal to this Court.

In reviewing the trial court's decision on a request for DNA testing, we are to employ a bifurcated standard of review. See Rivera v. State, 89 S.W.3d 55, 59 (Tex. Crim.App.2002) (citing Guzman v. State, 955 S.W.2d 85, 89 (Tex.Crim.App.1997)). We must defer to the "trial court's determination of issues of historical fact and application-of-law-to-fact issues that turn on credibility and demeanor, while we review de novo other application-of-law-to-fact issues." Id.

Brewer argues the trial court erred in denying his request for DNA testing, which was filed pursuant to article 64.03 of the Texas Code of Criminal Procedure. See Act of April 3, 2001, 77th Leg., R.S., ch. 2, § 2, 2001 Tex. Gen. Laws 2, 3–4, (amended 2003) (current version at Tex. Code Crim. Proc. Ann. art. 64.03 (Vernon Supp.2004)). To obtain DNA testing under article 64.03, a movant has the burden of establishing several statutory requirements.[2] See id.; Bell v. State, 90 S.W.3d

---

1. "DNA (deoxyribonucleic acid) is a type of organic molecule, in the shape of a double helix, found in the nuclei of all living cells. See E.D. Hirsch, et al., The New Dictionary of Cultural Literacy 530 (3rd ed.2002)." See Shannon v. State, 116 S.W.3d 52, 53 n. 1 (Tex.Crim.App.2003).

2. Although article 64.03 was amended in 2003, this appeal is governed by the 2001 law. See Act of April 25, 2003, 78th Leg., R.S., ch.

13, §§ 8, 9, 2003 Tex. Gen. Laws 16, 17 (providing that former law governs motions for DNA testing filed before September 1, 2003). Former article 64.03(a) provided:

(a) A convicting court may order forensic DNA testing under this chapter only if:
(1) the court finds that:
(A) the evidence:
(i) still exists and is in a condition making DNA testing possible; and

301, 306 (Tex.Crim.App.2002) (holding that convicting court must order DNA testing only if the statutory conditions are met); *Rivera,* 89 S.W.3d at 59. The only statutory element at issue in this appeal, however, is whether Brewer proved that if exculpatory results had been obtained through DNA testing, a reasonable probability exists he would not have been prosecuted or convicted. The governing case is *Kutzner v. State,* which interpreted the language in the 2001 statute to require a convicted person to show a reasonable probability exists that exculpatory DNA evidence would prove his innocence; DNA evidence that "merely mudd[ies] the waters" would not meet this standard. *Kutzner v. State,* 75 S.W.3d 427, 438–39 (Tex.Crim.App. 2002).[3] The Court of Criminal Appeals has reaffirmed the *Kutzner* interpretation of article 64.03(a)(2)(A) in subsequent cases. *See Skinner v. State,* 122 S.W.3d 808, 811 (Tex.Crim.App.2003); *Bell,* 90 S.W.3d at 306; *Rivera,* 89 S.W.3d at 59.

At the hearing on the motion for DNA testing, the reporter's record from Brewer's capital murder trial was introduced into evidence. Appellant's affidavit filed in support of his motion contended he was not present at the victim's apartment when the murder was committed. The affidavit states that at about 1:30 a.m. on the night of the murder, three of Brewer's acquaintances, Carlton Ford, Michael Rideaux, and Eric Grant, drove up to Brewer's residence. As Brewer and his brother, Tony,

approached the vehicle, Brewer observed Eric Grant had a cut on his arm which he was trying to hide from view, and Michael Rideaux had a cut on his eye which had been bleeding. Tony told Brewer that Ford and Rideaux had robbed someone. The Brewer affidavit says: "A day later, Tony gave me some jewelry that he took from Carlton Ford, which he said he saw Carlton Ford trying to hide in his garage. Tony asked me if I could sell the jewelry for some money." Brewer says he later learned about the murder from reading the newspaper. Brewer's affidavit says he had never met the victim, J.R., nor did he go to J.R.'s house. Brewer says he did not speak about these events before because he was protecting his brother Tony from any trouble.

An examination of the reporter's record from the 1991 trial, indicates the testimony of Ford and Rideaux directly implicated Brewer in the murder of J.R. Two witnesses, a mother and daughter, testified Brewer sold the mother a wristwatch later identified as having belonged to the victim, J.R. A police detective testified that, two days following the murder, Brewer was in possession of a ring and necklace that belonged to the victim. The reporter's record indicates that, pursuant to Tex. R.Crim. Proc. Ann. art. 38.14 (Vernon 1979), the jury was provided instructions from the trial court on accomplice witness testimony as to the State's witnesses Carlton Ford and Michael Rideaux. The jury

(ii) has been subjected to a chain of custody sufficient to establish that it has not been substituted, tampered with, replaced, or altered in any material respect; and

(B) identity was or is an issue in the case; and

(2) the convicted person establishes by a preponderance of the evidence that:

(A) a reasonable probability exists that the person would not have been prosecut-

ed or convicted if exculpatory results had been obtained through DNA testing; and

(B) the request for the proposed DNA testing is not made to unreasonably delay the execution of sentence or administration of justice.

3. As the 2001 version of article 64.03(a)(2)(A), along with *Kutzner's* interpretation, was in effect at the time Brewer filed his motion for DNA testing, we apply that law to the instant appeal.

found Brewer guilty of the murder and the trial court assessed an automatic life sentence. At the motion for DNA testing hearing, Brewer's counsel recognized he had the burden of proof. Among the exhibits Brewer's counsel tendered into evidence were the following statements made to the police: Rideaux's statements on August 19, 1989, August 20, 1989, and August 14, 1990; and Carlton Ford's statements on August 19, 1989, August 20, 1989, and August 22, 1989. Regarding Ford's August 20, 1989, statement, Brewer's counsel pointed to the statement's concluding portion that originally read as follows:

Today I was at the county jail, and they put me and Rideau in a holding cell together for a few minutes. We sor [sic] of talked about what we had said to the police[.] [and what we should do to clear our names.]

The bracketed portion of the statement containing the words "and what we should do to clear our names." was lined out by hand and a period was added following the word "police" as indicated by brackets above.

Brewer's counsel also focused on evidence in the State's possession for which DNA testing was requested. The evidence is described in the lab report introduced at the hearing as follows:

Two (2) envelopes labelled [sic], "From brown paper bag in kitchen" each containing paper towels from which contained stains which appeared to be blood.

Results: We were unable to detect the presence of blood on these stains.

As the laboratory tests were conducted in 1989, Brewer argued that DNA testing, a more advanced testing procedure, could possibly detect the DNA of a third party— particularly the DNA of either of Brewer's key accusers, Carlton Ford or Michael Rideaux, or of Eric Grant. It is at this point in the hearing that the following exchange took place which frames the issue we are called upon to decide:

THE COURT: Even if there was DNA testing that showed that Rideaux was present, it's Rideaux's blood, that's not—that's nothing new, right?

[Prosecutor]: No, sir.

[Trial Counsel]: Well, it would be. There's no evidence in the 1,235 page trial transcript there was no evidence that he was in any—in fact, the evidence was contrary to that; that his presence was there was brief, that he was not involved in any part of the altercation, he didn't get into a fight. That—the presence of his blood in that crime scene would be a big shock to everyone, or it would be at least an argument that he was involved in some kind of physical altercation which caused him to bleed.

THE COURT: But by everyone's consensus of opinion of what's contained in your exhibits here that still does not remove Mr. Brewer from the crime scene, does it?

[Trial Counsel]: No, Your Honor. I mean, the hypothetical defense—which I can't retry the case here without talking about all the witnesses—would be that Carlton and Rideaux and other witnesses were there, that this gentleman was killed and that Mr. Brewer was a person they decided to blame it on.

THE COURT: Even if hypothetically speaking, we conducted DNA, came back to show either Grant or Rideaux, right, we're talking about a degree of culpability of those people compared to maybe what the jury saw at the time of Mr. Brewer's trial, right?

[Trial Counsel]: Well, if they're—I would say it would be a degree of credibility. Because if their statements and testimony at trial were completely re-

canted by the presence of their blood at the crime scene, then I don't know that—I mean that would be to me an argument sufficient enough to exonerate Mr. Brewer.

THE COURT: Well, what you're asking the Court to do is go back through the DNA testing to attack the credibility of The State's witnesses. It is not to exonerate Mr. Brewer but to attack the credibility of The State's witnesses and the credibility of those witnesses was done by a jury.

[Trial Counsel]: If the credibility of those witnesses is zero, then that case could never have gone forward to trial because they are the only direct links to—they're the only direct evidence that Mr. Brewer was—of his involvement, the only direct evidence of him being the one that committed the murder.

THE COURT: Thank you.

The trial court then denied Brewer's motion for DNA testing.

**4.** After the Court of Criminal Appeals' holding in *Kutzner*, the 78th Texas Legislature, in House Bill 1011, amended the part of Chapter 64 at issue in the instant appeal, article 64.03(a)(2)(A). The following is reproduced from a portion of the bill analysis of House Bill 1011 promulgated by the House Criminal Jurisprudence Committee during the 78th Regular Session of the Texas Legislature:

ANALYSIS

H.B. 1011 makes the following changes:

. . . .

2. Under the current law, in order to qualify for DNA testing, the defendant must establish by a preponderance of the evidence that "a reasonable probability exists that the person would not have been prosecuted or convicted if exculpatory results had been obtained through DNA testing."

This provision was litigated before the Court of Criminal Appeals in *Kutzner v. State*, 75 S.W.3d 427 (Tex.Crim.App.2002). The Court's opinion in Kutzner highlighted the need for clarification by the Legislature as to how Chapter 64 is to be used. Specifically, the Legislature intended for Chapter 64 to be used as a motions procedure

The appellate standard for reviewing the issue before us is whether Brewer established, by a preponderance of the evidence, a reasonable probability existed that exculpatory DNA tests on the items in question would prove his innocence. *Kutzner*, 75 S.W.3d at 439. Although the specific wording of article 64.03(a)(2)(A) is in terms of proof by a preponderance of the evidence that the convicted person "would not have been prosecuted or convicted" in the presence of exculpatory DNA test results, the Court of Criminal Appeals in *Kutzner* held the Legislature intended the language to mean proof of innocence. *Id.* The Court said that this proof of innocence burden of article 64.03(a)(2)(A) could be comparable to the proof necessary to sustain a post-conviction habeas corpus applicant's burden of showing "actual, factual innocence" upon a claim of newly discovered evidence. *Kutzner*, 75 S.W.3d at 437 n. 20 (comparing to *Ex parte Elizondo*, 947 S.W.2d 202, 207 (Tex.Crim.App.1996)).[4] The burden to

which, but for the fact that it appears after conviction, works like a pretrial motion. The Legislature did not intend to introduce procedures and burdens which mirror the traditional post-trial procedure of writs of habeas corpus.

In order to make its intent clearer, H.B. 1011 makes the following changes to Article 64.03:

a. The bill clarifies that the standard of proof with regard to getting a DNA test is "preponderance of the evidence." By taking out the "reasonable probability" language, the intent is to clarify that the defendant does not have to meet two burdens. Despite the reasoning in Kutzner, the Legislature did not intend for the defendant to have to prove "actual innocence" (a principle under habeas law) in order to meet his burden to have the test done. The defendant must prove that, had the results of the DNA test been available at trial, there is a 51% chance that the defendant would not have been convicted.

b. The bill further clarifies that the defendant does not have to meet a two-prong test

establish innocence would be a significant burden under *Kutzner* if likened to that required under *Elizondo*. *See generally Ex parte Tuley*, 109 S.W.3d 388, 390, 394 (Tex.Crim.App.2002) (a post-conviction habeas case involving an actual innocence claim).

Under the *Kutzner* standard requiring Brewer to show a reasonable probability exists that exculpatory DNA tests would prove his innocence, we cannot find he met his burden. The theory presented by Brewer's counsel suggested a series of events would culminate in Brewer's acquittal: in essence, because the defense had already attacked the credibility of the two key prosecution witnesses, Rideaux and Ford, through their multiple versions of the events of the night of the murder, a final, definitive piece of credibility-destroying evidence, such as a positive DNA test for Rideaux's blood, would have caused the State's case to collapse. Under the holding in *Kutzner*, however, this theory advanced by Brewer is too tenuous to provide the solid proof of innocence mandated. Defendant's "proof of innocence" burden under article 64.03(a)(2)(A) has been held to require a showing that exculpatory DNA results would outweigh all other evidence of the convicted person's guilt. *See Rivera*, 89 S.W.3d at 59–60 (no reasonable probability of innocence where absence of victim's DNA under defendant's fingernails was outweighed by defendant's confession); *Jacobs v. State*, 115 S.W.3d 108, 111, 113–114 (Tex.App.-Texarkana 2003, pet. ref'd) (no reasonable probability of innocence as presence of a third-party's hair on bed linens where sexual assault occurred would not necessarily prove de-

fendant's innocence in the face of a wealth of inculpatory trial evidence including eyewitness testimony and testimony from the defendant's wife establishing the defendant's identity as the perpetrator); *Baggett v. State*, 110 S.W.3d 704, 708 (Tex. App.-Houston [14th Dist.] 2003, pet. ref'd); *Thompson v. State*, 95 S.W.3d 469, 472 (Tex.App.-Houston [1st Dist.] 2002, pet. ref'd).

Both Ford and Rideaux were cross-examined concerning their involvement in the murder, and the reasons behind the numerous written statements they gave to the police following their arrest for the murder. The jury was made aware of the credibility issues regarding both their trial testimony and their statements to the police. Had DNA testing of the stained paper towels taken from the kitchen revealed DNA from Ford, Rideaux, or some other third party, this fact would not satisfy the *Kutzner* standard. *See generally Skinner*, 122 S.W.3d at 811; *Bell v. State*, 90 S.W.3d at 306; *Kutzner*, 75 S.W.3d at 438–439.

As Brewer's motion for DNA testing was filed prior to the effective date of the 2003 amendments to article 64.03, we are required to follow the case law interpreting the statute in effect at the time the motion was filed. *See* our footnote 3, *supra*. Considering the standard set in *Kutzner*, we find no error by the trial court in denying Brewer's motion.

AFFIRMED.

---

of not having been prosecuted or convicted. Rather, the intent was that the person would have to prove by a preponderance of the evidence that he would not have been convicted. Accordingly, the bill strikes the "prosecuted or" language.

*See* House Criminal Jurisprudence Comm., Bill Analysis, Tex. H.B. 1011, 78th Leg., R.S. (2003).