In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-04-220 CR


____________________



RONALD JURON BREWER, Appellant



V.



THE STATE OF TEXAS, Appellee






On Appeal from the Criminal District Court


Jefferson County, Texas


Trial Court Cause No. 53663






O P I N I O N



 This is a DNA testing case. (1) In September 1991, a Jefferson County jury found
appellant, Ronald Juron Brewer, guilty of capital murder. As Brewer was sixteen years'
old on the date of the offense, he was not subject to the death penalty. See Tex. Pen.
Code Ann. § 8.07(c) (Vernon Supp. 2004); Brewer v. State, No. 09-91-223 CR (Tex.
App.--Beaumont 1992, pet. ref'd) (not designated for publication). 

 On November 19, 2002, Brewer filed a motion for post-conviction DNA testing
pursuant to Chapter 64 of the Texas Code of Criminal Procedure. An evidentiary hearing
was held and the trial court denied the motion. Relying on language contained in article
64.05, because Brewer's underlying conviction was for capital murder, he appealed the
trial court's denial to the Court of Criminal Appeals. In Sisk v. State, 131 S.W.3d 492,
494-97 (Tex. Crim. App. 2004), the Court of Criminal Appeals found article 64.05 to be
ambiguous, and found the Legislature did not intend Chapter 64 DNA appeals in "capital
cases" to be filed in the Court of Criminal Appeals unless the defendant is assessed the
death penalty. Because of its holding in Sisk, the Court of Criminal Appeals held it had
no jurisdiction over Brewer's DNA appeal and transferred the appeal to this Court. 

 In reviewing the trial court's decision on a request for DNA testing, we are to
employ a bifurcated standard of review. See Rivera v. State, 89 S.W.3d 55, 59 (Tex.
Crim. App. 2002) (citing Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)). 
We must defer to the "trial court's determination of issues of historical fact and
application-of-law-to-fact issues that turn on credibility and demeanor, while we review
de novo other application-of-law-to-fact issues." Id. 


 Brewer argues the trial court erred in denying his request for DNA testing, which
was filed pursuant to article 64.03 of the Texas Code of Criminal Procedure. See Act of
April 3, 2001, 77th Leg., R.S., ch. 2, § 2, 2001 Tex. Gen. Laws 2, 3-4, (amended 2003)
(current version at Tex. Code Crim. Proc. Ann. art. 64.03 (Vernon Supp. 2004)). To
obtain DNA testing under article 64.03, a movant has the burden of establishing several
statutory requirements. (2) See id.; Bell v. State, 90 S.W.3d 301, 306 (Tex. Crim. App.
2002) (holding that convicting court must order DNA testing only if the statutory
conditions are met); Rivera, 89 S.W.3d at 59. The only statutory element at issue in this
appeal, however, is whether Brewer proved that if exculpatory results had been obtained
through DNA testing, a reasonable probability exists he would not have been prosecuted
or convicted. The governing case is Kutzner v. State, which interpreted the language in
the 2001 statute to require a convicted person to show a reasonable probability exists that
exulpatory DNA evidence would prove his innocence; DNA evidence that "merely
mudd[ies] the waters" would not meet this standard. Kutzner v. State, 75 S.W.3d 427,
438-39 (Tex. Crim. App. 2002). (3) The Court of Criminal Appeals has reaffirmed the
Kutzner interpretation of article 64.03(a)(2)(A) in subsequent cases. See Skinner v. State,
122 S.W.3d 808, 811 (Tex. Crim. App. 2003); Bell, 90 S.W.3d at 306; Rivera, 89
S.W.3d at 59. 

 At the hearing on the motion for DNA testing, the reporter's record from Brewer's
capital murder trial was introduced into evidence. Appellant's affidavit filed in support
of his motion contended he was not present at the victim's apartment when the murder was
committed. The affidavit states that at about 1:30 a.m. on the night of the murder, three
of Brewer's acquaintances, Carlton Ford, Michael Rideaux, and Eric Grant, drove up to
Brewer's residence. As Brewer and his brother, Tony, approached the vehicle, Brewer
observed Eric Grant had a cut on his arm which he was trying to hide from view, and
Michael Rideaux had a cut on his eye which had been bleeding. Tony told Brewer that
Ford and Rideaux had robbed someone. The Brewer affidavit says: "A day later, Tony
gave me some jewelry that he took from Carlton Ford, which he said he saw Carlton Ford
trying to hide in his garage. Tony asked me if I could sell the jewelry for some money." 
Brewer says he later learned about the murder from reading the newspaper. Brewer's
affidavit says he had never met the victim, J.R., nor did he go to J.R.'s house. Brewer
says he did not speak about these events before because he was protecting his brother Tony
from any trouble. 

 An examination of the reporter's record from the 1991 trial, indicates the testimony
of Ford and Rideaux directly implicated Brewer in the murder of J.R. Two witnesses, a
mother and daughter, testified Brewer sold the mother a wristwatch later identified as
having belonged to the victim, J.R. A police detective testified that, two days following
the murder, Brewer was in possession of a ring and necklace that belonged to the victim. 
 The reporter's record indicates that, pursuant to Tex. R. Crim. Proc. Ann. art.
38.14 (Vernon 1979), the jury was provided instructions from the trial court on accomplice
witness testimony as to the State's witnesses Carlton Ford and Michael Rideaux. The jury
found Brewer guilty of the murder and the trial court assessed an automatic life sentence. 
 At the motion for DNA testing hearing, Brewer's counsel recognized he had the
burden of proof. Among the exhibits Brewer's counsel tendered into evidence were the
following statements made to the police: Rideaux's statements on August 19, 1989,
August 20, 1989, and August 14, 1990; and Carlton Ford's statements on August 19,
1989, August 20, 1989, and August 22, 1989. Regarding Ford's August 20, 1989,
statement, Brewer's counsel pointed to the statement's concluding portion that originally
read as follows:

 Today I was at the county jail, and they put me and Rideau in a holding cell
together for a few minutes. We sor [sic] of talked about what we had said
to the police[.] [and what we should do to clear our names.] 


The bracketed portion of the statement containing the words "and what we should do to
clear our names." was lined out by hand and a period was added following the word
"police" as indicated by brackets above. 

 Brewer's counsel also focused on evidence in the State's possession for which DNA
testing was requested. The evidence is described in the lab report introduced at the hearing
as follows:

 Two (2) envelopes labelled [sic], "From brown paper bag in kitchen" each
containing paper towels from which contained stains which appeared to be
blood.

 Results: We were unable to detect the presence of blood on
these stains. 


 As the laboratory tests were conducted in 1989, Brewer argued that DNA testing,
a more advanced testing procedure, could possibly detect the DNA of a third party --
particularly the DNA of either of Brewer's key accusers, Carlton Ford or Michael
Rideaux, or of Eric Grant. It is at this point in the hearing that the following exchange
took place which frames the issue we are called upon to decide: 

 THE COURT: Even if there was DNA testing that showed that
Rideaux was present, it's Rideaux's blood, that's not - - that's nothing new,
right?


 [Prosecutor]: No, sir.


 [Trial Counsel]: Well, it would be. There's no evidence in the 1,235
page trial transcript there was no evidence that he was in any - - in fact, the
evidence was contrary to that; that his presence was there was brief, that he
was not involved in any part of the altercation, he didn't get into a fight. 
That - - the presence of his blood in that crime scene would be a big shock
to everyone, or it would be at least an argument that he was involved in
some kind of physical altercation which caused him to bleed.


 THE COURT: But by everyone's consensus of opinion of what's
contained in your exhibits here that still does not remove Mr. Brewer from
the crime scene, does it?


 [Trial Counsel]: No, Your Honor. I mean, the hypothetical defense -
- which I can't retry the case here without talking about all the witnesses - -
would be that Carlton and Rideaux and other witnesses were there, that this
gentleman was killed and that Mr. Brewer was a person they decided to
blame it on. 


 THE COURT: Even if hypothetically speaking, we conducted DNA,
came back to show either Grant or Rideaux, right, we're talking about a
degree of culpability of those people compared to maybe what the jury saw
at the time of Mr. Brewer's trial, right?


 [Trial Counsel]: Well, if they're - - I would say it would be a degree
of credibility. Because if their statements and testimony at trial were
completely recanted by the presence of their blood at the crime scene, then
I don't know that - - I mean that would be to me an argument sufficient
enough to exonerate Mr. Brewer. 


 THE COURT: Well, what you're asking the Court to do is go back
through the DNA testing to attack the credibility of The State's witnesses. 
It is not to exonerate Mr. Brewer but to attack the credibility of The State's
witnesses and the credibility of those witnesses was done by a jury.


 [Trial Counsel]: If the credibility of those witnesses is zero, then that
case could never have gone forward to trial because they are the only direct
links to - - they're the only direct evidence that Mr. Brewer was - - of his
involvement, the only direct evidence of him being the one that committed
the murder.


 THE COURT: Thank you.


The trial court then denied Brewer's motion for DNA testing.

 The appellate standard for reviewing the issue before us is whether Brewer
established, by a preponderance of the evidence, a reasonable probability existed that
exculpatory DNA tests on the items in question would prove his innocence. Kutzner, 75
S.W.3d at 439. Although the specific wording of article 64.03(a)(2)(A) is in terms of
proof by a preponderance of the evidence that the convicted person "would not have been
prosecuted or convicted" in the presence of exculpatory DNA test results, the Court of
Criminal Appeals in Kutzner held the Legislature intended the language to mean proof of
innocence. Id. The Court said that this proof of innocence burden of article
64.03(a)(2)(A) could be comparable to the proof necessary to sustain a post-conviction
habeas corpus applicant's burden of showing "actual, factual innocence" upon a claim of
newly discovered evidence. Kutzner, 75 S.W.3d at 437 n.20 (comparing to Ex parte
Elizondo, 947 S.W.2d 202, 207 (Tex. Crim. App. 1996)). (4) The burden to establish
innocence would be a significant burden under Kutzner if likened to that required under
Elizondo. See generally Ex parte Tuley, 109 S.W.3d 388, 390, 394 (Tex. Crim. App.
2002) (a post-conviction habeas case involving an actual innocence claim).

 Under the Kutzner standard requiring Brewer to show a reasonable probability exists
that exculpatory DNA tests would prove his innocence, we cannot find he met his burden. 
The theory presented by Brewer's counsel suggested a series of events would culminate
in Brewer's acquittal: in essence, because the defense had already attacked the credibility
of the two key prosecution witnesses, Rideaux and Ford, through their multiple versions
of the events of the night of the murder, a final, definitive piece of credibility-destroying
evidence, such as a positive DNA test for Rideaux's blood, would have caused the State's
case to collapse. Under the holding in Kutzner, however, this theory advanced by Brewer
is too tenuous to provide the solid proof of innocence mandated. Defendant's "proof of
innocence" burden under article 64.03(a)(2)(A) has been held to require a showing that
exculpatory DNA results would outweigh all other evidence of the convicted person's
guilt. See Rivera, 89 S.W.3d at 59-60 (no reasonable probability of innocence where
absence of victim's DNA under defendant's fingernails was outweighed by defendant's
confession); Jacobs v. State, 115 S.W.3d 108, 111, 113-114 (Tex. App.--Texarkana 2003,
pet. ref'd) (no reasonable probability of innocence as presence of a third-party's hair on
bed linens where sexual assault occurred would not necessarily prove defendant's
innocence in the face of a wealth of inculpatory trial evidence including eyewitness
testimony and testimony from the defendant's wife establishing the defendant's identity as
the perpetrator); Baggett v. State, 110 S.W.3d 704, 708 (Tex. App.--Houston [14th Dist.]
2003, pet. ref'd); Thompson v. State, 95 S.W.3d 469, 472 (Tex. App.--Houston [1st Dist.]
2002, pet. ref'd). 

 Both Ford and Rideaux were cross-examined concerning their involvement in the
murder, and the reasons behind the numerous written statements they gave to the police
following their arrest for the murder. The jury was made aware of the credibility issues
regarding both their trial testimony and their statements to the police. Had DNA testing
of the stained paper towels taken from the kitchen revealed DNA from Ford, Rideaux, or
some other third party, this fact would not satisfy the Kutzner standard. See generally
Skinner, 122 S.W.3d at 811; Bell v. State, 90 S.W.3d at 306; Kutzner, 75 S.W.3d at 438-439. 

 As Brewer's motion for DNA testing was filed prior to the effective date of the
2003 amendments to article 64.03, we are required to follow the case law interpreting the
statute in effect at the time the motion was filed. See our footnote 3, supra. Considering
the standard set in Kutzner, we find no error by the trial court in denying Brewer's motion.

 AFFIRMED. 

 PER CURIAM

 

Submitted on May 31, 2004

Opinion Delivered August 11, 2004 

Publish


Before McKeithen, C.J., Burgess, and Gaultney, JJ.





 
1. "DNA (deoxyribonucleic acid) is a type of organic molecule, in the shape of a
double helix, found in the nuclei of all living cells. See E.D. Hirsch, et al., The New
Dictionary of Cultural Literacy 530 (3rd ed. 2002)." See Shannon v. State, 116 S.W.3d
52, 53 n.1 (Tex. Crim. App. 2003). 
2. Although article 64.03 was amended in 2003, this appeal is governed by the 2001
law. See Act of April 25, 2003, 78th Leg., R.S., ch. 13, §§ 8, 9, 2003 Tex. Gen. Laws 16, 17
(providing that former law governs motions for DNA testing filed before September 1, 2003). 
Former article 64.03(a) provided:

 (a) A convicting court may order forensic DNA testing under this chapter only
if:

 (1) the court finds that:

 (A) the evidence:

 (i) still exists and is in a condition making DNA testing 
 possible; and

 (ii) has been subjected to a chain of custody sufficient to 
 establish that it has not been substituted, tampered 
 with, replaced, or altered in any material respect; and

 (B) identity was or is an issue in the case; and 

 (2) the convicted person establishes by a preponderance of the evidence that:

 (A) a reasonable probability exists that the person would not
have been prosecuted or convicted if exculpatory results had
been obtained through DNA testing; and

 (B) the request for the proposed DNA testing is not made to
unreasonably delay the execution of sentence or administration
of justice.
3. As the 2001 version of article 64.03(a)(2)(A), along with Kutzner's interpretation,
was in effect at the time Brewer filed his motion for DNA testing, we apply that law to the
instant appeal. 
4. After the Court of Criminal Appeals' holding in Kutzner, the 78th Texas
Legislature, in House Bill 1011, amended the part of Chapter 64 at issue in the instant
appeal, article 64.03(a)(2)(A). The following is reproduced from a portion of the bill
analysis of House Bill 1011 promulgated by the House Criminal Jurisprudence Committee
during the 78th Regular Session of the Texas Legislature:

 ANALYSIS

 H.B. 1011 makes the following changes:

 . . . .

 2. Under the current law, in order to qualify for DNA testing, the defendant
must establish by a preponderance of the evidence that "a reasonable
probability exists that the person would not have been prosecuted or
convicted if exculpatory results had been obtained through DNA testing."

 This provision was litigated before the Court of Criminal Appeals in
Kutzner v. State, 75 S.W.3d 427 (Tex. Crim. App. 2002). The Court's
opinion in Kutzner highlighted the need for clarification by the Legislature
as to how Chapter 64 is to be used. Specifically, the Legislature intended
for Chapter 64 to be used as a motions procedure which, but for the fact that
it appears after conviction, works like a pretrial motion. The Legislature did
not intend to introduce procedures and burdens which mirror the traditional
post-trial procedure of writs of habeas corpus. 

 In order to make its intent clearer, H.B. 1011 makes the following changes
to Article 64.03:


 a. The bill clarifies that the standard of proof with regard to getting a DNA
test is "preponderance of the evidence." By taking out the "reasonable probability" language, the intent is to clarify that the defendant does not have
to meet two burdens. Despite the reasoning in Kutzner, the Legislature did
not intend for the defendant to have to prove "actual innocence" (a principle
under habeas law) in order to meet his burden to have the test done. The
defendant must prove that, had the results of the DNA test been available at
trial, there is a 51% chance that the defendant would not have been
convicted.


 b. The bill further clarifies that the defendant does not have to meet a two-prong test of not having been prosecuted or convicted. Rather, the intent
was that the person would have to prove by a preponderance of the evidence
that he would not have been convicted. Accordingly, the bill strikes the
"prosecuted or" language. 

See House Criminal Jurisprudence Comm., Bill Analysis, Tex. H.B. 1011, 78th Leg.,
R.S. (2003).