IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. AP-75,254






EX PARTE CARL HENRY BLUE, Applicant








ON APPLICATION FOR A WRIT OF HABEAS CORPUS


IN CAUSE NO. 23292-272

FROM THE 272ND DISTRICT COURT OF BRAZOS COUNTY





 Johnson, J., filed a concurring opinion.

 


C O N C U R R I N G O P I N I O N



 The United States Supreme Court has, unfortunately, inserted into the legal lexicon the
phrase "actual innocence of the death penalty." The meaning of the phrase is more properly
expressed as "ineligibility for the death penalty" because it has nothing whatsoever to do with a
claim of actual innocence, that is, that the claimant did not commit the charged offense. In Atkins
v. Virginia, 536 U.S. 304 (2002), the Supreme Court held that it violates the United States
Constitution to execute mentally retarded persons, saying that "the mentally retarded should be
categorically excluded from execution." Atkins at 318. Translated from the English, "categorically
excluded" means "cannot be sentenced to," which means "is ineligible for." 

 The violation addressed in Atkins was based on the Eighth Amendment prohibition against
cruel and unusual punishment, specifically, "that death is not a suitable punishment for a mentally
retarded criminal. . . . Construing and applying the Eighth Amendment in the light of our 'evolving
standards of decency,' we therefore conclude that such punishment is excessive and that the
Constitution 'places a substantive restriction of the State's power to take the life' of a mentally
retarded offender." Id. at 521. A violation occurs when a death sentence is assessed against a
mentally retarded defendant or, perhaps even earlier, when the state chooses to seek such a death
sentence.

 Determination of a defendant's mental abilities are easily ascertained before trial, just as we
have done for decades in regard to mental illness and competence to stand trial. If a defendant is,
in fact, mentally retarded, Atkins removes the death penalty from the universe of possible
punishments. If death is not a possible punishment, the special issues will never be submitted to the
jury, just as they are not submitted when the state chooses not to seek a death sentence for capital
murder. If the issues are not submitted, "no rational jurors would have answered in the state's favor
one or more of the special issues . . .." If the jury does not answer the special issues in the state's
favor, the only option is a mandatory life sentence, a result which the Supreme Court did not in any
way forbid or limit.

 I do not believe that Atkins should, or even can, be read to say that the state may sentence
mentally retarded persons to death but is prohibited from carrying out that sentence. If we apply that
logic outside of the context of capital punishment, the state would be permitted to sentence a retarded
defendant to prison but could not incarcerate him. If we were considering such a case under Boykin, (1)
we would undoubtably find that such a reading "would lead to absurd consequences that the
Legislature could not possibly have intended . . .." Boykin at 785 (emphasis in original). 

 If the state may sentence a defendant to death, but may not execute him, then the sentence
of death has been commuted, by operation of law, to life in prison. If the only possible punishment
is a life sentence, the cause ceases to be a capital case, (2) and death row is not an option. Let us then
be forthright and honest about the actual sentence and call it what it is-life in prison-a sentence
served in the general population. 

 I join the opinion of the Court.


Filed: March 7, 2007

Publish
1. Boykin v. State, 818 S.W.2d 782 (Tex. Crim. App. 1991).
2. See, Sisk v. State, 131 S.W.3d 492, 497 (Tex. Crim. App. 2004)("We hold that the term 'a capital case'. . .
means a case in which a convicted person was sentenced to death.").