In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-16-00359-CR
_____

JOHN LAWRENCE MATTHEWS, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 1st District Court
Jasper County, Texas
Trial Cause No. 10823JD

MEMORANDUM OPINION

John Lawrence Matthews appeals the trial court's denial of his motion for

post-conviction DNA testing and motion to appoint counsel pursuant to chapter 64

of the Texas Code of Criminal Procedure. *See* Act of May 12, 2015, 84th Leg., R.S.,

ch. 70, §§ 1–2, arts. 64.01(a–1), 64.03(a), § 3 (stating the change in law made by this

Act applies to a motion for forensic DNA testing filed on or after the effective date),

1

§ 4 (effective September 1, 2015), 2015 Tex. Sess. Law Serv. 1061, 1061–62 (amended 2017) (current version at Tex. Code of Crim. Proc. arts. 64.01, 64.03).[1] Matthews was convicted of capital murder in December 2011, and sentenced to life in prison.

## Background

Matthews appealed his underlying conviction, which the Thirteenth Court of Appeals affirmed. *See Matthews v. State*, No. 13-12-00052-CR, 2013 WL 3894005, at *21 (Tex. App.—Corpus Christi July 25, 2013, pet. ref'd) (mem. op., not designated for publication). The underlying facts of Matthews's conviction were detailed in that opinion. *Id.* at *1–21. We briefly recite the facts pertinent to this appeal.

In December 2011, Matthews and his two brothers were tried together in a single trial and convicted by a jury of capital murder of Jessie Palomo, Jr. and sentenced to life without parole. *Id.* at *1. At trial, testimony from accomplices and other corroborating evidence was presented. *Id.* at *1–12, 14–15. The evidence showed the brothers had traveled from Galveston to Kirbyville, Texas, to purchase

---

[1] We cite to the 2015 version of the statute as Matthews's original motion for DNA testing and for appointment of counsel pursuant to chapter 64 was filed on October 13, 2015. The record does not indicate the trial court ruled on the original motions. Matthews filed amended motions for post-conviction DNA testing and appointment of counsel on November 16, 2015.

drugs from Palomo. *Id.* at *1. The middleman for the drug deal testified the plan was for Matthews and his brothers to buy a large amount of drugs from Palomo at a motel room. *Id.* at *4. Sometime after the three brothers entered the motel room with Palomo, witnesses observed Palomo crash through the window of the room with his pants down around his ankles and hands bound by his shirt and duct tape. *Id.* at *7–9. He had been shot twice. *Id.* at *9. Witnesses then observed three individuals wearing hoodies and black masks fleeing the scene. *Id.* at *7–8. Accomplice testimony indicated the brothers all wore black hoodies. *Id.* at *2. On the way back to Galveston, the brothers discussed the shooting incident among themselves and exhibited two guns. They discarded bloody clothing along the way. *Id.* at *3. Instead of returning home after the incident, Matthews and his girlfriend had someone else rent them a hotel room in Galveston. *Id.* at *3. Matthews and his girlfriend were arrested the following morning while leaving the motel after detectives traced Matthews's cellphone from a call he made to the middleman. *Id.* at *11. The jury was shown correspondence that Matthews sent to his girlfriend from jail instructing her to keep quiet and containing veiled references to two guns being disposed of. *Id.* at *3.

At trial, the State alleged Palomo was murdered during the commission of a robbery. *Id.* at *15. The jury was instructed on the law of the parties. *Id.* at *16.

3

Matthews argued on appeal that the evidence was insufficient to show he participated as a principal or a party in the murder. *Id.* at *15. However, the Thirteenth Court of Appeals noted the evidence showed the brothers brought firearms to meet a drug dealer, Palomo, who could provide a significant amount of drugs, worth at least $30,000. *Id.* at *17. Moreover, the brothers brought duct tape, a large nylon bag, masks or hoodies, and rubber gloves to their meeting with Palomo, which showed an intent to commit robbery. *Id.* The autopsy report revealed that before Palomo was shot, he suffered blunt-force trauma to his head, most likely from the butt or barrel of a pistol. *Id.* He was bound with duct tape and his pockets were emptied. *Id.* The Thirteenth Court of Appeals concluded that when it considered the combined force of all the non-accomplice evidence that tended to connect Matthews to the offense, the non-accomplice evidence sufficiently corroborated the testimony of the accomplice witnesses and showed the presence of the brothers at the time of the murder. *Id.* at *14.

During the investigation, law enforcement obtained buccal swabs from Matthews and his brothers to develop profiles to compare with a swab taken from the mouth of a soda can found at the scene. *Id.* at *12. The State's DNA expert testified that David Haywood, Matthews's brother, was the source of the major component of the DNA profile from the soda can, but there was a portion of the

4

profile from the can that was consistent with Matthews's profile. *Id.* On cross-examination, the State's expert admitted that the portion of the profile consistent with Matthews's profile was a common marker that one in nine African Americans and one in forty-two Caucasian persons possess, and he could not testify to any reasonable degree of scientific certainty that Matthews contributed to that DNA profile. *Id.*

## Standard of Review

When reviewing the trial court's chapter 64 rulings, we employ a bifurcated standard. *See Reed v. State*, 541 S.W.3d 759, 768 (Tex. Crim. App. 2017), *cert. denied*, 2018 WL 707016 (June 25, 2018); *Rivera v. State*, 89 S.W.3d 55, 59 (Tex. Crim. App. 2002). We give almost total deference to the trial court's findings of historical fact and application of the law to facts which hinge on witnesses' credibility and demeanor. *See Reed*, 541 S.W.3d at 768; *Ex parte Gutierrez*, 337 S.W.3d 883, 890 (Tex. Crim. App. 2011); *Routier v. State*, 273 S.W.3d 241, 246 (Tex. Crim. App. 2008); *Whitaker v. State*, 160 S.W.3d 5, 8 (Tex. Crim. App. 2004). We consider all other application-of-law-to-fact questions *de novo*. *See Gutierrez*, 337 S.W.3d at 890; *Routier*, 273 S.W.3d at 246. Because the trial court did not conduct a hearing or hear testimony from witnesses on the post-conviction DNA motion, we will review the issues *de novo*. *See Smith v. State*, 165 S.W.3d 361, 363

5

(Tex. Crim. App. 2005); *Ambriati v. State*, No. 09-15-00065-CR, 2015 WL 6998616, at *4 (Tex. App.—Beaumont Nov. 12, 2015, pet. ref'd) (mem. op., not designated for publication).

**Analysis**

**A. Post-Conviction DNA Testing**

Matthews complains in his first issue that the trial court abused its discretion by denying his post-conviction motion for DNA testing. In his amended motion for DNA testing, Matthews argued new technology exists for analyzing DNA mixtures. He points in particular to the DNA evidence found on a soda can and a chip bag in the motel room and the opinions regarding those findings from the State's DNA expert. Matthews also makes a blanket assertion that "identity is an issue."

The statutory requirements of chapter 64 are preconditions that must be met before a court may order forensic DNA testing. *See Holberg v. State*, 425 S.W.3d 282, 284, 288 (Tex. Crim. App. 2014). Article 64.01 governs the filing of a motion, and article 64.03 provides the prerequisites for testing. *See* 2015 Tex. Sess. Law Serv. at 1061–62. Pursuant to article 64.01(a-1), "[a] convicted person may submit to the convicting court a motion for forensic DNA testing of evidence that has a reasonable likelihood of containing biological material. The motion must be

6

accompanied by an affidavit, sworn to by the convicted person, containing statements of fact in support of the motion." *Id.* at 1061.

A court may only order forensic DNA testing under chapter 64 if: (1) it finds the evidence still exists, is in a condition to be tested, subjected to a proper chain of custody, and there is a reasonable likelihood the evidence contains biological material suitable for testing; (2) identity was or is an issue in the case; and (3) the convicted person establishes by a preponderance of evidence he would not have been convicted if exculpatory results were obtained through DNA testing. *Id.* at 1061–62. For the court to order post-conviction DNA testing, the "[b]asic requirements are that biological evidence exists, that evidence is in a condition that it can be tested, that the identity of the perpetrator is or was an issue, and that this is the type of case in which exculpatory DNA results would make a difference." *Gutierrez*, 337 S.W.3d at 891. A favorable or exculpatory DNA result is one that would undermine the validity of the appellant's conviction; otherwise, DNA testing would "simply 'muddy the waters.'" *Id.* at 892 (citing *Rivera*, 89 S.W.3d at 59).

This is not a case where DNA testing of a lone perpetrator is sought. *See id.* at 900. In cases involving accomplices, the burden is more difficult as there is not a lone perpetrator who must have left DNA at the scene. *Id.* As the Court in *Gutierrez* framed the critical question: "Will this testing, if it shows that the biological material

7

does not belong to the defendant, establish, by a preponderance of the evidence, that he did not commit the crime as either a principal or a party?" *Id.* We cannot answer that question affirmatively in the present case. This crime involved a number of accomplices, and the jury was instructed on the law of the parties which states that a person is criminally responsible for an offense committed by the conduct of another if, "acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense[.]" *See* Tex. Penal Code Ann. § 7.02(a)(2) (West 2011). Even assuming new DNA testing would exclude Matthews as a contributor to the mixture on the soda can and chip bag, his exclusion as a contributor on those items would not affirmatively cast doubt on his conviction as a participant or party. *See Gutierrez*, 337 S.W.3d at 900; *Reed*, 541 S.W.3d at 780 (holding trial judge did not err in denying chapter 64 motion because appellant failed to show by a preponderance of the evidence a reasonable probability that exculpatory DNA results would change the outcome of his trial and that his request was not made to unreasonably delay the execution of his sentence).

The evidence at trial showed Matthews and his brothers were meeting the victim to purchase drugs, they were observed entering a motel room with the victim, who was later found beaten, his hands bound, pockets emptied, and pants pulled

8

down prior to being shot twice. *Matthews*, 2013 WL 3894005, at *2–4, 8–9. The three perpetrators were seen fleeing the scene on foot, and the brothers were picked up by Matthews's girlfriend, who drove them back to Galveston. *Id.* at *2. On the way home, they discussed the crime, exhibited two guns and discarded shirts out of the car window. *Id.* at *3. Moreover, instead of staying in his home when he returned to Galveston, Matthews had another individual rent a hotel room for him. *Id.* Matthews also sent letters to his girlfriend from jail telling her to keep quiet. *Id.* at *15. Matthews's brother, David Haywood, was identified as being the major contributor to the DNA mixture on the soda can and chip bag found in the motel room where the victim was murdered. *Id.* at *12. Evidence of Matthews's guilt as a party or a participant was overwhelming. *Id.* at *1–15. Multiple Texas courts have held a movant does not meet his burden under Article 64.03 if there is other substantial evidence of guilt independent of that for which the movant seeks DNA testing. *See Swearingen v. State*, 303 S.W.3d 728, 736 (Tex. Crim. App. 2010); *Wilson v. State*, 185 S.W.3d 481, 486 (Tex. Crim. App. 2006) (noting in addition to all other evidence inculpating appellant, a newer DNA test would not produce evidence to exonerate appellant); *Whitaker*, 160 S.W.3d at 9 (in affirming trial court's denial of post-conviction DNA testing, the Court agreed with State and noted regardless of blood on weapon, other evidence at trial established appellant's guilt);

*Brewer v. State*, 143 S.W.3d 389, 394 (Tex. App.—Beaumont 2004, no pet.) (noting defendant's burden of showing exculpatory DNA results was outweighed by all of the other evidence of guilt).

Under Chapter 64, an appellant may be entitled to new forensic DNA testing if the evidence sought would exculpate him of all statutory aggravating factors that elevated the crime to capital murder. *Leal v. State*, 303 S.W.3d 292, 296 (Tex. Crim. App. 2009). Matthews failed to provide factual support to show further DNA testing of the soda can or chip bag would exculpate Matthews from the robbery or attempted robbery of Palomo.[2] The evidence on Matthews's initial appeal of his conviction showed the brothers brought firearms to meet a drug dealer, Palomo, who could provide a significant amount of drugs, worth at least $30,000.00. *Matthews*, 2013 WL 3894005, at *17. In addition, the brothers brought duct tape, a large nylon bag, masks or hoodies, and rubber gloves to their meeting with Palomo. *Id*. These items show intent to commit robbery. *Id*., at *16.

---

[2] On appeal, Matthews filed an affidavit from Harry J. Bonnell, M.D. on January 17, 2017. Matthews's amended motion for post-conviction DNA testing was filed with the trial court on November 15, 2015, and ruled upon by the trial court on September 22, 2016. Because the affidavit was not filed with the trial court before its ruling on the motion, it was not considered by the trial court and therefore, is not a part of the appellate record before us, and we did not consider such affidavit in our decision. *See* Tex. R. App. P. 34.1.

In his amended motion Matthews asserts "identity is an issue." "The identity requirement in Chapter 64 relates to the issue of identity as it pertains to the DNA evidence." *Prible v. State*, 245 S.W.3d 466, 470 (Tex. Crim. App. 2008). The identity requirement cannot be met unless the DNA testing determines the identity of the perpetrator or exculpates the accused. *Id.*; *see Leal*, 303 S.W.3d at 296; *see also* 2015 Tex. Sess. Law Serv. at 1061–62. Matthews has not asserted in his motions that he was not with David Haywood the night of the murder, nor has he alleged that the previous DNA results linking Haywood to the soda can in the room were flawed. Additional DNA testing on the soda can or chip bag present at the scene will not identify who killed Palomo or exclude Matthews in this case, since the jury's verdict is based on the law of the parties. Therefore, he cannot meet the identity requirement. *See Leal*, 303 S.W.3d at 296.

Because we have determined that any further DNA testing of the soda can or chip bag would not exculpate Matthews as either a participant or party in the crime, he cannot meet the threshold requirement for post-conviction testing under article 64.03. *See* 2015 Tex. Sess. Law Serv. at 1061–62; *Gutierrez*, 337 S.W.3d at 891–92, 894; *Swearingen*, 303 S.W.3d at 736. Moreover, we have determined Matthews cannot meet the identity requirement as any further DNA testing of these items would not identify the perpetrator in this case or exclude him. *See Leal*, 303 S.W.3d

11

at 296. Therefore, because Matthews failed to provide factual support for his motion as required by article 64.01(a), the trial court did not commit error in denying Matthews's motion for post-conviction DNA testing. *See* 2015 Tex. Sess. Law Serv. at 1061–62. We overrule issue one.

## B.    Appointment of Counsel

Matthews argues on appeal that the trial judge failed to rule on his motion to appoint counsel. While there is no indication in the record that the trial court ruled on Matthews's motion or amended motion to appoint counsel, the court denied Matthews's motion for post-conviction DNA testing. Thus, we conclude that the request was overruled by implication. *See* Tex. R. App. P. 33.1(a)(2)(A) (to preserve error, record must show that the trial court "ruled on the request, objection, or motion, either expressly or implicitly"); *Joseph v. State*, Nos. 03-16-00404-CR, 03-16-00405-CR, 2017 WL 3471038, at *2 (Tex. App.—Austin Aug. 9, 2017, no pet.) (mem. op., not designated for publication) (concluding trial court's order denying request for DNA testing after appellant made his request for appointed counsel, impliedly denied request for appointed counsel).

To be entitled to appointed counsel for a post-conviction motion for DNA testing, Matthews must show "reasonable grounds" exist for the filing of such motion. *Gutierrez*, 337 S.W.3d at 889–90. A convicted person is not required to

12

prove he is entitled to testing as a precondition to having counsel appointed, but "whether 'reasonable grounds' exist for testing necessarily turns on what is required for testing." *Gutierrez*, 337 S.W.3d at 891. There are no reasonable grounds to appoint counsel or justification for testing if an exculpatory result would not alter the likelihood the inmate would still have been convicted. *Id.* at 892. Such is the case here, as the results of any further testing are unlikely to exonerate Matthews given the totality of the evidence presented at trial in this cause. *See id.* Matthews has not demonstrated reasonable grounds for the motion to be filed, so the trial court was not required to appoint counsel to represent him. *See id.*; *Warner v. State*, No. 05-12-01165-CR, 2013 WL 3294878, at *2 (Tex. App.—Dallas June 26, 2013, pet. ref'd) (mem. op., not designated for publication) (holding that because appellant did not establish reasonable grounds for the motion to be filed, the trial court was not required to appoint counsel). Accordingly, we overrule Matthews's second issue.

## Conclusion

Having overruled all issues on appeal, we affirm the ruling of the trial court denying Matthews's post-conviction motion for DNA testing and the trial court's implicit denial of his motion for appointment of counsel.

AFFIRMED.

_____
CHARLES KREGER
Justice

Submitted on January 2, 2018
Opinion Delivered June 27, 2018
Do Not Publish

Before Kreger, Horton, and Johnson, JJ.