Bobby Gene BUTLER, Appellant,

v.

The STATE of Texas, State.

No. 2–04–178–CR.

Court of Appeals of Texas, Fort Worth.

March 31, 2005.

---

---

William Trantham & Associates, William E. Trantham, Denton, for appellant.

Bruce Isaacks, Crim. Dist. Atty., Kathleen Walsh, Charles E. Orbison, Gretchen Choe, Ryan Calvert, Beth Hayes, Asst. Dist. Attys. for Denton County, Denton, for appellee.

PANEL B: DAUPHINOT, HOLMAN, and GARDNER, JJ.

## OPINION

ANNE GARDNER, Justice.

Appellant was charged by information with assault-family violence and pleaded not guilty. Appellant was found guilty by a jury and sentenced by the trial court to two-hundred-seventy days' confinement, probated for a term of eighteen months. In a single issue, Appellant argues that the trial court erred in making a factual finding of family violence rather than submitting this issue to the jury. We affirm.

Because sufficiency of the evidence is not at issue, we need only briefly discuss the facts of this case. The record shows that Appellant and the victim, Janyce Couch, were engaged, had a child together, and had been living together for approximately two and a half years. Couch testified that on the evening of October 20, 2003, she and Appellant got into an argument and she was assaulted by Appellant. She stated they were in the bedroom and that Appellant came to her side of the bed, pushed her down, got on top of her, and pinned her to the bed by placing his knee on her chest. She testified that he began to punch the pillow on either side of her head, striking the side of her head twice. Couch stated that she was able to get away from Appellant and attempted to call for help; however, they began to struggle over the phone, during which time Appellant grabbed her by her arm and pushed her into the wall, causing scratches and bruises to her arm.

Appellant challenged Couch's testimony regarding the events that caused her injuries. Appellant testified that on the night of October 20, 2003, they got into a disagreement, he put his arm on her shoulder, and they fell to the bed. He stated that he did fall on top of her, but that he immediately got up. He testified that he used his hand to push himself up, but did not punch the pillow. Appellant further testified that on October 17, 2003, they had gotten into an argument during which time he tried to leave with their child. He stated that Couch tried to take the child, and he used his hand to "move [her] away from the door."

The jury subsequently found Appellant guilty. At the punishment phase, the trial court made an affirmative finding that Appellant and the victim were members of the same household at the time of the offense. In a single issue, Appellant argues that the trial court erred in making a factual finding of family violence without submitting the issue to the jury.

Appellant's argument appears twofold: (1) he did not receive "notice that he was being tried for assault with a finding of family violence to be added"; and (2) based on the United States Supreme Court's decisions in *Apprendi v. New Jersey* and *Blakely v. Washington,* the finding of family violence had to be submitted to the jury. *See Blakely v. Washington,* —— U.S. ——, 124 S.Ct. 2531, 2536, 159 L.Ed.2d 403 (2004); *Apprendi v. New Jersey,* 530 U.S. 466, 490, 120 S.Ct. 2348, 2362–63, 147 L.Ed.2d 435 (2000). Our sister court has recently addressed both parts of this issue. *See Thomas v. State,* 150 S.W.3d 887 (Tex.App.-Dallas 2004, pet. filed). We agree with its reasoning and decision, and thus adopt its opinion as set forth below.

Under the code of criminal procedure, in the trial of an offense against a person, "if the court determines that the offense involved family violence ... the court shall make an affirmative finding of that fact and enter the affirmative finding in the judgment of the case." Tex.Code Crim. Proc. Ann. art. 42.013 (Vernon Supp.2004–05); *see also Thomas,* 150 S.W.3d at 888. The family code defines family violence as "an act by a member of a family or household against another member of the family or household that is intended to result in physical harm, bodily injury, [or] assault." Tex. Fam.Code Ann. § 71.004(1) (Vernon 2002); *see Thomas,* 150 S.W.3d at 888. The family code's definition of "family" includes individuals who are the parents of the same child, without regard to marriage. Tex. Fam.Code Ann. § 71.003. Additionally, the family code's definition of "household" includes persons living together in the same dwelling, without regard to whether they are related to each other. *Id.* § 71.005.

■ A finding of family violence "impacts a defendant's sentence only if the defendant has previously committed a family-violence assault." *Thomas,* 150 S.W.3d at 888. Under the penal code, a misdemeanor assault, such as the one in this case, becomes a third degree felony if it is committed against "a member of the defendant's family or household, if it is shown on the trial of the offense that the defendant has been previously convicted of an offense against a member of the defendant's family or household." Tex. Penal Code Ann. § 22.01(b)(2) (Vernon Supp. 2004–05); *see Thomas,* 150 S.W.3d at 888. Here, however, the State did not attempt to prove Appellant had previously been convicted of an assault involving family violence. *Thomas,* 150 S.W.3d at 888. The evidence before the trial court simply showed the single family-violence assault alleged in the information. *Id.* Thus, the family violence finding could not increase Appellant's sentence in this case.[1]

■ Nevertheless, the State sufficiently notified Appellant of its intent to seek a finding of family violence. In the information, the caption indicates the charge as "ASSAULT FAMILY VIOLENCE," and the State alleged Appellant had assaulted Janyce Couch. The record clearly reflects Appellant's awareness that Couch was his fiancee and that they had a child together. *See id.* at 888–89 (finding sufficient notice when record showed victim was defendant's ex-wife and they had a child together). Under the family code, and as found by the trial court, they were not only members of the same household, but they also met the definition of "family." Tex.

---

1. Appellant also states that he had to perform additional requirements, such as attending a Batterer's Intervention Program, as a result of the family violence finding. However, a court may impose any reasonable condition on probation, but that does not constitute an increase in Appellant's sentence.

FAM.CODE ANN. § 71.003; *see also Thomas,* 150 S.W.3d at 889. And under the code of criminal procedure, the trial court had no discretion in entering a family violence finding once it determined the offense involved family violence. *See* TEX.CODE CRIM. PROC. ANN. art. 42.013; *Thomas,* 150 S.W.3d at 889. Therefore, we hold that Appellant had all the notice necessary to prepare for the State to seek a family violence finding.

Appellant also argues that the family violence finding should have been presented to the jury for consideration and cites as authority the United States Supreme Court decisions in *Blakely v. Washington* and *Apprendi v. New Jersey.* These cases set forth the rule that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Blakely,* 124 S.Ct. at 2536; *Apprendi,* 530 U.S. at 490, 120 S.Ct. at 2362–63.

Appellant appears to challenge the constitutionality of article 42.013 under both the United States and Texas Constitutions. However, as Appellant has failed to provide any argument or authority that the Texas Constitution provides him greater protection in this instance and has failed to independently develop this argument, we will address Appellant's constitutional claims together. *See Riddle v. State,* 888 S.W.2d 1, 7 (Tex.Crim.App.1994) (holding that arguments under the United States and Texas Constitutions must be developed independently of the other), *cert. denied,* 514 U.S. 1068, 115 S.Ct. 1701, 131 L.Ed.2d 563 (1995); *Johnson v. State,* 853 S.W.2d 527, 533 (Tex.Crim.App.1992) (declining to address appellant's Texas constitutional claims when he failed to provide any argument or authority as to how protection under Texas Constitution was dif-ferent than protection under United States Constitution), *cert. denied,* 510 U.S. 852, 114 S.Ct. 154, 126 L.Ed.2d 115 (1993).

▮▮▮▮ There are two types of challenges to the constitutionality of a statute: the statute is unconstitutional as applied to the defendant, or the statute is unconstitutional on its face. *Fluellen v. State,* 104 S.W.3d 152, 167 (Tex.App.-Texarkana 2003, no pet.). An as-applied challenge to a statute cannot be raised for the first time on appeal. *See Garcia v. State,* 887 S.W.2d 846, 861 (Tex.Crim.App.1994), *cert. denied,* 514 U.S. 1005, 115 S.Ct. 1317, 131 L.Ed.2d 198 (1995). Because Appellant did not make an as-applied challenge in the trial court, we will assume he is making a facial challenge to the constitutionality of article 42.013. A facial challenge to a statute may be raised for the first time on appeal. *Ex parte Flores,* 130 S.W.3d 100, 106 (Tex.App.-El Paso 2003, pet. ref'd). A facial challenge to a statute is the most difficult challenge to mount successfully because the challenger must establish that no set of circumstances exists under which the statute will be valid. *Santikos v. State,* 836 S.W.2d 631, 633 (Tex.Crim. App.), *cert. denied,* 506 U.S. 999, 113 S.Ct. 600, 121 L.Ed.2d 537 (1992). Thus, it is incumbent on the challenger to first show that the statute is unconstitutional as to him in his situation. *Id.* Moreover, even as to a facial challenge, it is not sufficient to show that the statute may be unconstitutional as to others. *Id.* It is still a prerequisite to a facial challenge that the challenger establish that the statute is unconstitutional as applied to him. *Id.; Fluellen,* 104 S.W.3d at 167.

▮▮▮▮ Appellant's constitutional challenge is not ripe for review because the statute has not yet been applied to him. The ripeness doctrine examines the timing of a lawsuit and its factual posture at the time of its filing. *Ex parte Cross,* 69

S.W.3d 810, 814 (Tex.App.-El Paso 2002, no pet.). It also allows courts to avoid premature adjudication and serves constitutional interests in prohibiting advisory opinions. *Id.* The theory behind the doctrine is straightforward-if the plaintiff's injury is not concrete and depends on contingent, remote, or hypothetical facts, the court does not have jurisdiction to hear the dispute. *Id.*

A finding of family violence under article 42.013 would only affect Appellant by increasing "the penalty for a crime beyond the prescribed statutory maximum" in violation of *Apprendi* if he were subsequently convicted for an additional assault-family violence. *See Apprendi,* 530 U.S. at 490, 120 S.Ct. at 2362–63. It is not until this hypothetical subsequent conviction occurs that the level of assault would be increased from a Class A misdemeanor to a third degree felony, subjecting Appellant to a higher penalty range. *See* TEX. PENAL CODE ANN. § 22.01(b)(2).

The application of article 42.013 that would allow a higher penalty range is contingent on Appellant being convicted for a subsequent assault-family violence. Because it is contingent on a remote possibility of a future conviction, the statute has not been unconstitutionally applied to Appellant. *See Ex parte Fox,* No. 14–02–00446–CR, 2003 WL 21191227, at *4 (Tex. App.-Houston [14th Dist.] 2003, no pet.) (not designated for publication) (holding that appellant could not make any constitutionality claim as to Texas Code of Criminal Procedure article 62.02 because it had not been applied to him in any unconstitutional manner). Thus, the proper time to raise this constitutional argument is after a subsequent charge or indictment for assault-family violence, if one arises. *See id.* (stating that the proper time for appellant to raise his constitutional challenge is after he has been charged or indicted for the

future offense). Accordingly, Appellant's constitutional challenge is not ripe for our review.

Furthermore, we agree with the State and our sister court in *Thomas* that *Blakely* and *Apprendi* do not affect the validity of the finding of family violence by the trial court. *Thomas,* 150 S.W.3d at 889. The family violence finding made here had no effect whatsoever on Appellant's punishment in this case. *Id.; see Resendiz v. State,* 112 S.W.3d 541, 550 (Tex.Crim.App. 2003) (acknowledging that *Apprendi* applies only to facts that increase the penalty beyond the "prescribed statutory maximum"), *cert. denied,* 541 U.S. 1032, 124 S.Ct. 2098, 158 L.Ed.2d 713 (2004). In the present case there were no facts that would increase Appellant's penalty. Appellant contends that "[t]he finding by the trial court enhances the effect of the conviction by making it a pre-cursor offense to a felony if an assault involving family violence is charged subsequently." However, Appellant provides no authority as to how this statement makes *Blakely* and *Apprendi* applicable in this case, and we find that this argument is without merit. Therefore, we agree with our sister court in *Thomas* and conclude that the holdings in *Blakely* and *Apprendi* do not affect Appellant's case. *Thomas,* 150 S.W.3d at 889.

We conclude that Appellant had sufficient notice that the trial court would be required to make an affirmative finding of family violence, that Appellant's constitutional challenge of article 42.013 is not yet ripe, and that *Blakely* and *Apprendi* have no application to the facts of this case. Thus, we overrule Appellant's sole issue and affirm the trial court's decision.

DAUPHINOT, J. filed a dissenting opinion.

LEE ANN DAUPHINOT, Justice, dissenting.

The trial court's judgment in this case provides that the jury found Appellant guilty of assault family violence. The jury did not so find; it found Appellant guilty of assault. The charging language of the information does not allude to family violence; the jury charge itself does not mention family violence. Instead, the trial court entered the family violence finding on its own after the jury convicted Appellant of simple assault. The majority upholds the trial court's judgment. Because I believe the majority opinion disregards the state and federal constitutional rights to a jury trial,[1] I must respectfully dissent from the holding that the trial judge in a jury trial may properly replace the jury as the factfinder in determining whether the evidence shows that the offense involves family violence.

The majority states that because a finding of family violence does not result in a longer maximum sentence, the right to a jury trial does not prohibit the trial court's usurping the jury's factfinding power to determine that the offense involves family violence and to enter this finding on the judgment. The flaws in this conclusion can be revealed by examining the law concerning the deadly weapon finding as well as a recent line of U.S. Supreme Court cases-*Apprendi, Ring, Blakely,* and *Booker.*[2]

1. *See* U.S. Const. amends. VI, XIV; Tex. Const. art. I, §§ 10, 15.

2. *United States v. Booker,* —— U.S. ——, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005); *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004); *Ring v. Arizona,* 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002); *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).

DEADLY WEAPON FINDING

"In 1977, the Texas Legislature proposed adding a 'deadly weapon' provision to article 42.12 of the Code of Criminal Procedure."[3] Although this measure would not necessarily lengthen the maximum sentence, it

would have numerous legal consequences, including the fact that 'where a deadly weapon has been exhibited during a commission of an offense, the parole date [would be] figured on flat time alone without consideration of good time.' During that session, the Texas Department of Corrections expressed concern to the Legislature that it would be unable to determine whether a particular inmate was subject to a deadly weapon finding if there were no express 'deadly weapon' language contained in the indictment or elsewhere.[4]

The Texas Legislature responded by including a subsection providing "that when the trier of fact found that a deadly weapon or firearm was used in the commission of the offense, that finding would be entered on the judgment, which would then be sent with the order of commitment."[5] This legislative fix, however,

did not ... address the circumstances under which the trial judge should enter a deadly weapon finding in the judgment when a jury, not the judge, was the factfinder—how, for example, would a trial judge know when the jury had, in fact, found that the defendant used or

3. *Lafleur v. State,* 106 S.W.3d 91, 94 (Tex. Crim.App.2003).

4. *Id.* (citing *Polk v. State,* 693 S.W.2d 391, 393 n. 1 (Tex.Crim.App.1985) (quoting a bill analysis prepared by the general counsel for the Texas Department of Corrections)).

5. *Id.*

exhibited a deadly weapon during the commission of the offense? [6]

This was the question the Texas Court of Criminal Appeals addressed in *Polk v. State*.[7] The Court noted that

> "[t]he indictment, charge, verdict and judgment" were all relevant in determining if, when, and how a jury makes a deadly weapon finding.[8] First, the Court analyzed the term "affirmative finding," and concluded that "these words taken together were intended to mean the trier of fact's *express* determination that a deadly weapon or firearm was actually used or exhibited during the commission of the offense."[9] The trial judge could not enter a deadly weapon finding simply because some evidence indicated that the defendant had used a deadly weapon and therefore the jury's general verdict might *imply* that it had believed that evidence. We quoted language from *Barecky v. State*[10] to illustrate the problem with implied deadly weapon findings:

> "The jury found appellant 'guilty as charged in the indictment.' The indictment contains no mention of a deadly weapon. Neither does the court's charge to the jury. Thus, the court entered its finding as to use of a deadly weapon in the absence of such an 'affirmative finding' by the appropriate trier of fact. This was improper."[11]

Thus, when neither the indictment nor the jury charge contained any "deadly weapon" language, a trial court could not enter an "implied" deadly weapon finding based solely upon its own assessment of the evidence and a general "guilty" verdict. Because the trial judge was not the factfinder, it did not have the authority to "find" implied facts that the jury did not expressly find.[12]

Similarly, the right to a jury trial applies to cases in which the evidence may show family violence "is involved." Adopting the *Lafleur* court's reasoning in discussing the deadly weapon affirmative finding in *Polk*,[13] when neither the information nor the jury charge contains any "family violence" language, a trial court cannot enter an "implied" or "its own" family violence finding based solely upon its own assessment of the evidence and a general "guilty" verdict. Because the trial judge in the case before us was not the factfinder, he did not have the authority either to "find" implied facts that the jury did not expressly find or to make his own determination of facts.[14]

### *APPRENDI, RING, BLAKELY,* AND *BOOKER*

In Article 42.013 of the Texas Code of Criminal Procedure, the Texas Legislature provided, "In the trial of an offense under Title 5, Penal Code, if the court determines that the offense involved family violence, as defined by Section 71.004, Family Code, the court shall make an affirmative finding of that fact and enter the affirmative finding in the judgment of the case."[15]

6. *Id.*

7. 693 S.W.2d at 391–400.

8. *Id.* at 393.

9. *Id.*

10. 639 S.W.2d 943 (Tex.Crim.App.1982).

11. *Polk,* 693 S.W.2d at 394 (quoting *Barecky,* 639 S.W.2d at 945).

12. *Lafleur,* 106 S.W.3d at 94–95.

13. *Id.* at 95.

14. *Id.*

15. TEX.CODE CRIM. PROC. ANN. art. 42.013 (Vernon Supp.2004–05).

When the Texas Legislature enacts a statute, it is presumed to comply with both the Texas Constitution and the U.S. Constitution.[16] If at all possible, we must therefore interpret a statute in a manner that renders it constitutional.[17] Almost ninety years ago, Justice Holmes wrote that "[a] statute must be construed, if fairly possible, so as to avoid not only the conclusion that it is unconstitutional but also grave doubts upon that score."[18] If there are two reasonable interpretations of a statute and if one would make the statute unconstitutional and the other would not, then we must choose the reasonable interpretation that avoids the constitutional infirmity.[19] The majority violates this canon, as demonstrated by the discussion of the *Apprendi* line of cases below.

In *Apprendi v. New Jersey*, the U.S. Supreme Court held that the Sixth Amendment does not permit a defendant to be "expose[d] ... to a penalty exceeding the maximum he would receive if punished according to the facts reflected in the jury verdict alone."[20] As the *Ring* court explained, in *Apprendi* the Court

> held that Apprendi's sentence violated his right to "a jury determination that [he] is guilty of every element of the crime with which he is charged, beyond a reasonable doubt." That right attached not only to Apprendi's weapons offense but also to the "hate crime" aggravating circumstance. New Jersey, the Court observed, "threatened Apprendi with certain pains if he unlawfully possessed a weapon and with additional pains if he selected his victims with a purpose to intimidate them because of their race." "Merely using the label 'sentence enhancement' to describe the [second act] surely does not provide a principled basis for treating [the two acts] differently."

The dispositive question, we said, "is one not of form, but of effect." If a State makes an increase in a defendant's authorized punishment contingent on the finding of a fact, that fact—no matter how the State labels it—must be found by a jury beyond a reasonable doubt.[21]

"[A]ll the facts which must exist in order to subject the defendant to a legally prescribed punishment *must* be found by the jury."[22] The *Ring* court, in extending *Apprendi's* holding to death penalty determinations, noted that

> "[t]he guarantees of jury trial in the Federal and State Constitutions reflect a profound judgment about the way in which law should be enforced and justice administered.... If the defendant preferred the common-sense judgment of a jury to the more tutored but perhaps less sympathetic reaction of the single judge, he was to have it."[23]

---

16. Tex. Gov't Code Ann. § 311.021(1) (Vernon 2005).

17. *Sisk v. State*, 131 S.W.3d 492, 494 (Tex. Crim.App.2004); *Lebo v. State*, 90 S.W.3d 324, 326 (Tex.Crim.App.2002); *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 873 (Tex.2000); *In re D.L.C.*, 124 S.W.3d 354, 362 (Tex.App.-Fort Worth 2003, no pet.).

18. *United States v. Jin Fuey Moy*, 241 U.S. 394, 401, 36 S.Ct. 658, 659, 60 L.Ed. 1061 (1916).

19. *State v. Shoppers World, Inc.*, 380 S.W.2d 107, 111 (Tex.1964).

20. *Apprendi*, 530 U.S. at 483, 120 S.Ct. at 2359.

21. *Ring*, 536 U.S. at 602, 122 S.Ct. at 2439 (citations omitted).

22. *Apprendi*, 530 U.S. at 499, 120 S.Ct. at 2367 (Scalia, J., concurring).

23. *Ring*, 536 U.S. at 609, 122 S.Ct. at 2443 (quoting *Duncan v. Louisiana*, 391 U.S. 145, 155–156, 88 S.Ct. 1444, 1451, 20 L.Ed.2d 491 (1968)).

With *Blakely,* in striking down Washington's sentencing guidelines, the U.S. Supreme Court further clarified what it meant by "statutory maximum":

> Our precedents make clear ... that the "statutory maximum" for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.* In other words, the relevant "statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings. When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts "which the law makes essential to the punishment," and the judge exceeds his proper authority.[24]

The *Blakely* court also emphasized the right to a jury trial provided in the U.S. Constitution:

> Ultimately, our decision cannot turn on whether or to what degree trial by jury impairs the efficiency or fairness of criminal justice. One can certainly argue that both these values would be better served by leaving justice entirely in the hands of professionals; many nations of the world, particularly those following civil-law traditions, take just that course. There is not one shred of doubt, however, about the Framers' paradigm for criminal justice: not the civil-law ideal of administrative perfection, but the common-law ideal of limited state power accomplished by strict division of authority between judge and jury. As *Apprendi* held, every defendant has the right to insist that the prosecutor prove to a jury all facts legally essential to the punishment.[25]

Finally, in *Booker,* the Court applied *Blakely* to reduce the status of the federal sentencing guidelines from mandatory to advisory.[26] Before *Booker,* the sentencing guidelines required a trial court to make independent findings after a jury verdict. These judge-made findings, in turn, often mandated that a defendant receive a higher sentence than the jury verdict justified. The guidelines address such areas as the defendant's criminal history and his role in the offense but also examine such issues as the status of the complainant, whether the defendant accepted responsibility for the offense (by pleading guilty), and whether he used a special skill in the completion of a crime (such as those skills possessed by a lawyer, accountant, pilot, or chemist).[27]

In *Booker,* the Court reminds us,

> It has been settled throughout our history that the Constitution protects every criminal defendant "against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." It is equally clear that the "Constitution gives a criminal defendant the right to demand that a jury find him guilty of all the elements of the crime with which he is charged."[28]

The majority asserts that *Blakely* and *Apprendi* do not affect the validity of the trial

---

**24.** *Blakely,* 124 S.Ct. at 2537 (citations omitted).

**25.** *Id.* at 2543.

**26.** *Booker,* 125 S.Ct. at 749, 755–56 (holding that imposing an enhanced sentence under the guidelines violates the Sixth Amendment right to jury trial), at 756–57 (severing the offending sections from the guidelines to leave the guidelines with an advisory role).

**27.** *See generally* United States Sentencing Commission, *Guidelines Manual* (Nov.2004).

**28.** *Booker,* 125 S.Ct. at 748 (citations omitted).

court's family violence finding because that finding "had no effect whatsoever on Appellant's punishment in this case."[29]   I disagree.

While a family violence finding may not increase the length of the sentence in the first case in which a finding is entered, it does make more onerous the possible conditions of community supervision. That is, the finding affects the sentence in a way that is similar to the effect of the federal sentencing guidelines before *Booker*. Section 42.12 of The Texas Code of Criminal Procedure provides,

> If a judge grants community supervision to a person convicted of an offense under Title 5, Penal Code, that the court determines involves family violence, the judge may require the person to make one payment in an amount not to exceed $100 to a family violence shelter center that receives state or federal funds and that serves the county in which the court is located. In this subsection, "family violence" has the meaning assigned by Section 71.004, Family Code, and "family violence shelter center" has the meaning assigned by Section 51.002, Human Resources Code.[30]

That section further provides,

> If the court grants community supervision to a person convicted of an offense involving family violence, as defined by Section 71.004, Family Code, the court may require the defendant to attend, at the direction of the community supervision and corrections department officer, counseling sessions for the elimination of violent behavior with a licensed counselor, social worker, or other professional who has been trained in family violence

intervention or to attend a battering intervention and prevention program if available that meets guidelines adopted by the community justice assistance division of the Texas Department of Criminal Justice. If the court requires the defendant to attend counseling or a program, the court shall require the defendant to begin attendance not later than the 60th day after the date the court grants community supervision, notify the community supervision and corrections department officer of the name, address, and phone number of the counselor or program, and report the defendant's attendance to the officer. The court shall require the defendant to pay all the reasonable costs of the counseling sessions or attendance in the program on a finding that the defendant is financially able to make payment. If the court finds the defendant is unable to make payment, the court shall make the counseling sessions or enrollment in the program available without cost to the defendant. The court may also require the defendant to pay all or a part of the reasonable costs incurred by the victim for counseling made necessary by the offense, on a finding that the defendant is financially able to make payment. The court may order the defendant to make payments under this subsection for a period not to exceed one year after the date on which the order is entered.[31]

The judgment in this case reveals that Appellant was subjected to both of these conditions of community supervision. The majority states in a footnote that "a court may impose any reasonable condition on probation, but that does not constitute an

---

**29.** Majority op. at 732.

**30.** TEX.CODE CRIM. PROC. ANN. art. 42.12, § 11(h) (Vernon Supp.2004–05).

**31.** *Id.* § 14(c).

increase in Appellant's sentence." [32] However, given the text of sections eleven and twelve of article 42.12, imposing a requirement of a $100 payment to a family shelter on a criminal defendant convicted of a misdemeanor would not be reasonable *without* a family violence finding. [33]

Additionally, the finding of family violence subjects Appellant to future consequences that one convicted of simple assault does not face. When a person commits assault, the offense is a class A misdemeanor, except that

> the offense is a felony of the third degree if the offense is committed against:
>
> . . .
>
> (2) a member of the defendant's family or household, if it is shown on the trial of the offense that the defendant has been previously convicted of an offense against a member of the defendant's family or household under this section. [34]

Under the majority's reasoning, an affirmative finding of family violence is entered on the judgment despite the factfinder making no such finding and despite the fact that the judge making the finding is not required to make the finding beyond a reasonable doubt or even by a preponderance of the evidence. Yet that finding, and only that finding, subjects Appellant *in this case* to paying $100 to an agency unconnected to either the judicial system or the community supervision system. [35] And in a subsequent prosecution for a family violence offense, the jury would rely on that judgment alone to find *beyond a reasonable doubt* that an earlier jury convicted the defendant of an offense involving family violence, boosting the offense from a class A misdemeanor to a third degree felony.

Consequently, at the time the trial court entered the family violence finding and as a result of such finding, Appellant was subject to additional, unique burdens of community supervision and was branded with the additional mark of a family violence offender. The trial court's finding therefore imposed a greater hardship on him than the jury's verdict allowed. As a result, I would hold that Appellant was subject to a greater punishment under the family violence finding than he would have been under the jury's verdict and that the trial court's actions violated the strictures of the *Apprendi* line. [36]

### CONCLUSION

Because the majority's interpretation of article 42.013 countenances the deprivation of a defendant's right to a jury trial and, indeed, the deprivation of the right to due process of law under both state and federal constitutions, and because it violates the

---

32. Majority op. at 730.

33. *See* TEX.CODE CRIM. PROC. ANN. art. 42.12 § 11(a)(18) (authorizing maximum reimbursement of $50 to general revenue fund for those convicted of misdemeanors), § 11(a)(21) (authorizing maximum payment to crime stoppers organization of $50), § 11(b) (*"A judge may not order a defendant to make any payments* as a term or condition of community supervision, *except for fines, court costs, restitution to the victim, and other conditions related personally* to the rehabilitation of the defendant or otherwise expressly authorized by law.") (emphasis added), § 11(h).

34. TEX. PENAL CODE ANN. § 22.01(b) (Vernon Supp.2004–05).

35. *See* TEX.CODE CRIM. PROC. ANN. art. 42.12, § 11(h).

36. *See, e.g., Blakely,* 124 S.Ct. at 2537 ("When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts 'which the law makes essential to the punishment,' and the judge exceeds his proper authority.") (citations omitted).

mandates of the U.S. Supreme Court, I must respectfully dissent.