IN THE COURT OF CRIMINAL APPEALS


OF TEXAS


 




NO. PD-0262-05







CORNELIUS S. SMITH, JR. Appellant


v.


THE STATE OF TEXAS




ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW


FROM THE FIFTH COURT OF APPEALS 

DALLAS COUNTY





 Hervey, J., delivered the opinion for a unanimous Court.


OPINION 



 Appellant was charged in a facially valid indictment with the felony offense of aggravated
assault. This indictment alleged that appellant "intentionally, knowingly and recklessly" caused
serious bodily injury to the victim "by causing [the victim] to ingest liquid." (1) Apparently, the victim
was seriously injured when appellant and several others forced him to drink large quantities of water
as part of the victim's initiation into a college fraternity in which appellant and the others were
members. The other participants in this incident were also indicted for aggravated assault. (2)

 Appellant claimed in a motion to quash (3) that he could be prosecuted only for the Class A
misdemeanor offense of hazing (4) under an application of a rule of statutory construction known as
the in pari materia doctrine. (5) Appellant's pleading asserted that the "alleged injuries to the [victim]
in the case, according to the government's theory of the case, arose out of a hazing incident wherein
the [victim] was forced to drink water by others in the fraternity." One of the other defendants filed
a brief in support of this claim. (6) This brief asserted:

 This case arises out of a widely reported incident known as the "SMU Hazing Case." 
In general, the factual information has alleged that the defendant in concert with co-defendants hazed the complaining witness by forcing the complaining witness to
consume water. It is alleged that the Defendant's were members of Alpha Phi Alpha
Fraternity, Inc. It is further alleged that the complaining witness consumed water in
his efforts to become a member of Alpha Phi Alpha, Fraternity Inc. It is alleged that
the complaining witness suffered serious bodily injury as a result of his excessive
consumption of water. It is alleged the complaining witness' was forced to by threat
of injury to consume water.


 To the extent, the State does not stipulate that these general factual allegations
adequately represent the factual predicate of the State's case, the defendant request
an in immediate hearing in order for the Court to ascertain the factual basis of the
State's case. See Tex. Code Crim. Proc.[ (7)] In addition, the defendant request that
the Court take judicial notice of the contents of the Court's file including the
probable cause affidavit.[ (8)] The defendant has been indicted under 22.02 of the
Texas Penal Code. [sic passim].


(Emphasis in bold in original).

 The State's response did not address the factual claims made in these defense pleadings. The
State's response addressed the legal issue of whether appellant could be prosecuted only for a Class
A misdemeanor offense of hazing under the in pari materia rule of statutory construction.

 The trial court held an evidentiary hearing. At this evidentiary hearing, appellant presented
the testimony of Jones, a captain with the Criminal Investigation Division at SMU, who investigated
the incident giving rise to the charge in this case. Jones was the only witness to testify at the
evidentiary hearing.

 Jones testified that the victim was injured from consuming a large amount of water during
a hazing activity as part of an initiation into a fraternity.

 Q. [DEFENSE]: Okay. Describe for me what was learned in the investigation of this
case.


 A. [JONES]: Well, we-we learned that an individual was involved in a hazing
activity at-in an off-campus apartment that resulted in an individual being taken to
the-well, [the victim] being taken to the hospital for consuming a large amount of
water and it ultimately caused him to go into convulsions and to go in-wind up I
intensive care.


 Q. Okay. And so when you use the term "hazing activities", I understand you to
mean an activity that is occurring as part of the initiation into a fraternal organization;
is that correct?


 A. Yes.

 

 Jones also testified that, to the best of his knowledge, "the acts causing bodily injury or
serious bodily injury in this case all occurred as a result of hazing."

 Q. [DEFENSE]: Okay. So the acts causing bodily injury or serious bodily injury in
this case all occurred as a result of hazing to the best of your knowledge, correct?


 A. [JONES]: Yes.


 Q. Okay. To your knowledge, have-to your knowledge, there were no activities that
occurred outside of hazing, correct?


 A. That's correct.

 

 During the State's cross-examination, Jones testified that he and a detective with the Dallas
Police department determined that "the defendants not only knowingly, intentionally or recklessly
engaged in hazing, but that they also knowingly, intentionally or recklessly caused serious bodily
injury." On redirect examination, Jones testified that the factual basis for this determination was the
"same factual basis for the hazing."

 Q. [DEFENSE]: The-the same factual basis for the statement you just made is the
exact same factual basis for the hazing; is that correct?


 A. [JONES]: Re-ask me the question.


 Q. Okay. She-she-you answered yes when she asked not only did they engage in
hazing, but they also intentionally, knowingly and recklessly caused serious bodily
injury to [the victim]. You answered, yes, to that question, right?


 A. Yes.


 Q. The acts which you're referring to in answering yes, are the same acts you
referenced when I discussed hazing with you, correct?


 A. Yes.


 Jones also testified that he sought indictments against appellant and the others based on "the
victim's statement" and "statements from other witnesses."

 Q. [DEFENSE]: Were you aware of a statement being obtained from the victim?


 A. [JONES]: I was made aware later, yes.


 Q. Did the statement from the victim identify the alleged culprits who were involved
in the assault?


 A. He identified several individuals who were there. I don't remember all the
specifics in what his statement was at this moment.


 Q. Were there defendants who were not identified in the victim's statement who are
charged in the crime today?


 A. I can't recall.


 Q. Other than the victim's statement, did you have statements from other witnesses
that caused you to seek indictments against other defendants here today?


 A. Yes.


 Jones also testified that he believed that the incident in this case went beyond hazing because
of "what the end result was" even though the hazing statute "not only covers serious bodily injury
but death as well." (9)

 Q. [DEFENSE]: When you said it went beyond hazing, are you familiar with the
hazing statute?


 A.[JONES]: Yes.


 Q. Are you aware of the fact that the hazing statute not only covers serious bodily
injury but death as well?


 A. Yes.


 Q. So when you made the statement that it went beyond hazing-in-in what effect did
it go beyond hazing?


 A. Well, just what the end result was.


 Q. Well, if the hazing statute covers death, what end result could be greater than
death?


 A. None, I guess.

 

 Jones also testified that he did not interview "all the witnesses involved in the case." Jones
testified that the Dallas police interviewed these witnesses.

 Q. [DEFENSE]: Well, you-you participated in the initial stage of the investigation;
is that correct?


 A. [JONES]: Yes.


 Q. Okay. Did you interview all the witnesses involved in this case?


 A. No.


 Q. Okay. Was that done by Dallas police?


 A. Yes.


 Following the evidentiary hearing, the trial court denied appellant's motion to quash/pretrial
writ of habeas corpus.

 [THE COURT]: Well, I don't know if it's as clear as the State believes it is, but I am
going to deny your Motion to Quash and Your Writ.


 On appellant's direct appeal from this ruling, the Court of Appeals decided that appellant's
in pari materia claim is not cognizable by pretrial writ of habeas corpus. Its opinion states:

 In this case, there is a valid statute under which the aggravated assault prosecution
is being brought. Appellant does not raise a challenge that would render his
prosecution void. He does not assert the aggravated assault statute is unconstitutional
on its face or that the prosecution is barred by the statute of limitations. Nor does
appellant contend there was any irregularity that would render the indictment void. 
Rather, appellant is challenging the State's decision as to which statute it will use to
prosecute appellant. Appellant's in pari materia claim, if successful, will not result
in his immediate release. If convicted of aggravated assault, appellant has an
adequate remedy on appeal to challenge the denial of his in pari materia claim. 
(Citations omitted).


 We hold that appellant's in pari materia claim is not cognizable by pretrial writ of
habeas corpus. Therefore, we affirm the trial court's order.


Ex parte Smith, 152 S.W.3d 170, 172 (Tex.App.-Dallas 2004).


 We granted review. (10) We decide that the claim presented in appellant's writ is not cognizable
in a pretrial writ of habeas corpus.

 Our decision in Ex parte Weise succinctly summarizes our case-law on the types of claims
that are cognizable in a pretrial writ of habeas corpus. See Ex parte Weise, 55 S.W.3d 617, 619-20
(Tex.Cr.App. 2001). Weise can be read to support the general principle that a claim is cognizable
in a pretrial writ of habeas corpus if, resolved in the defendant's favor, it would deprive the trial
court of the power to proceed and result in the appellant's immediate release. See Weise, 55 S.W.3d
at 619. (11)

 Our more recent decision in Ex parte Smith (12) is not to the contrary. In Smith, we stated,
among other things, that a defendant may raise in a pretrial writ of habeas corpus "certain issues
which, if meritorious, would bar prosecution or conviction." See Smith, slip op. at 5. We further
stated that "[b]ecause the denial of habeas corpus relief, based on fundamental constitutional
principles, permits an interlocutory appeal, appellate courts are careful to ensure that a pretrial writ
is not misused 'to secure pretrial appellate review of matters that in actual fact should not be put
before appellate courts at the pretrial stage.'" See Smith, slip op. at 6.

 This Court has decided that a defendant has a due process right to be prosecuted under a
"special" statute that is in pari materia with a broader statute when these statutes irreconcilably
conflict. See Mills v. State, 722 S.W.2d 411, 414 (Tex.Cr.App. 1986). And, it is apparent that, if
meritorious, the claim presented in appellant's pretrial writ of habeas corpus "would bar
prosecution" for the felony offense of aggravated assault. See Smith, slip op. at 5 (defendant may
raise in a pretrial writ of habeas corpus "certain issues which, if meritorious, would bar prosecution
or conviction").

 We nevertheless decide that appellant's in pari materia claim is not cognizable in a pretrial
writ of habeas. Initially, we note that the indictment is valid on its face. Compare Smith, slip op.
at 1-2 (when charging instrument shows on its face that prosecution is limitations-barred and that
pleading is not reparable, a defendant may seek relief from a time-barred prosecution by a pretrial
writ of habeas corpus). We also agree with the Court of Appeals that appellant can pursue his in pari
materia claim on appeal if necessary.

 More importantly, appellant's in pari materia claim is not yet ripe for review. See Weise,
55 S.W.3d at 621 (deciding that defendant's claim was not cognizable in pretrial writ of habeas
corpus because it was not yet ripe for review). Though we may have a general idea of the facts of
this case based on Jones' testimony at the evidentiary hearing and the representations in the
defensive pleadings, which appear to be based in part on newspaper accounts of the incident, we
believe it apparent from the portions of the record set out above that the State has more evidence to
present about which we can only speculate at this time. See Ex parte Cross, 69 S.W.3d 810, 814
(Tex.App.-El Paso 2002, pet. ref'd) (ripeness doctrine examines the timing of a lawsuit and its
factual posture at the time of filing).

 An appellate decision on the in pari materia claim would be premature before the State has
had an opportunity to develop a complete factual record during a trial, and we are not aware of any
authority that would require the State to prove its case before this time. See id. (ripeness doctrine
allows courts to avoid premature adjudication). Deciding the in pari materia claim now on what
would amount to a hypothetical set of facts that might be presented at appellant's trial would be
merely advisory. See id. (ripeness doctrine also serves constitutional interests in prohibiting advisory
opinions). (13)

 The judgment of the Court of Appeals is affirmed.

 

 Hervey, J.


Delivered: February 1, 2006

Publish

1. See Tex. Penal Code, §§22.01, 22.02(a)(1) (person commits offense of aggravated assault
if he "intentionally, knowingly, or recklessly" commits an assault that causes serious bodily injury
to another).
2. The record contains evidence that appellant and the others were expelled from school as a
result of this incident.
3. The trial court subsequently permitted appellant to convert this motion to quash into a pretrial
application for writ of habeas corpus.
4. See Tex. Educ. Code, § 37.152(a)(1), (d) (person commits Class A misdemeanor offense
of hazing if he engages in hazing that causes serious bodily injury to another).
5. This doctrine is a rule of statutory construction for determining which statutory provision
controls when a general statutory provision and a more specific statutory provision deal with the
same subject matter and they irreconcilably conflict. See id.; see also State v. Mancuso, 919 S.W.2d
86, 88 (Tex.Cr.App. 1986) and at 91 (McCormick, P.J., dissenting). It would appear that the
aggravated-assault statute and the hazing statute do not deal with the same subject matter. The
aggravated-assault statute defines a result-oriented offense and is generally implicated when, for
example, it is the actor's conscious desire to harm another. See Phillips v. State, 787 S.W.2d 391,
395 (Tex.Cr.App. 1990); Alvarado v. State, 704 S.W.2d 36, 39 (Tex.Cr.App. 1985); Beggs v. State,
597 S.W.2d 375, 377 (Tex.Cr.App. 1980). The hazing statute defines a conduct-oriented offense
and is generally implicated when, for example, the actor intentionally engages in conduct that harms
another irrespective of whether it is the actor's conscious desire to harm another. See Tex. Educ.
Code, § 37.151(6) (defining hazing as, among other things, a person's intentional harmful act
against a student for the purpose of being initiated into membership in an organization). In other
words, the hazing statute might not be implicated if the prosecution can prove that it was appellant's
conscious desire to seriously injure the victim. We did not grant discretionary review on whether
the aggravated assault statute and the hazing statute deal with the same subject matter; i.e., are in
pari materia. We, therefore, do not decide that issue in this proceeding. 
6. The record reflects that one of the other defendants filed a brief in support of the claim raised
in appellant's motion to quash/pretrial writ of habeas corpus and that all of the other defendants
joined appellant's motion to quash/pretrial writ of habeas corpus. 
7. This pleading does not cite any authority to support the assertion that the defense was entitled
to an "immediate hearing in order for the Court to ascertain the factual basis of the State's case." 
8. A probable cause affidavit in the record, in relevant part, states:


 On November 15, 2003, between 1:00 a.m. and 5 a.m. [the complainant] suffered an
aggravated assault with a deadly weapon [water] while at an apartment located at
6615 Shadybrook Lane #3280, Dallas, Dallas County, Texas. Suspects Smith,
Ibekwe, Kalu, Berhe, Perry, Harkey, Lee, and Bowie forced [the complainant] by
physical violence and threat of physical violence to drink large quantities of water
which caused hyponatrima Hypoxia. [The complainant] became comatose and was
in imminent danger of death.
9. See Footnote 4; see also Tex. Educ. Code, § 37.152(e) (person commits state jail felony if
he engages in hazing that causes death of another).
10. The sole ground upon which we granted discretionary review states:


 Is a claim cognizable by pretrial writ of habeas corpus where, if successful, it would
result in the defendant's immediate release and deprive the trial court of all power to
proceed?
11. In Weise, 55 S.W.3d at 619, this Court stated:


 In determining whether an issue is cognizable on habeas, we have considered a
variety of factors. We have looked at whether the alleged defect would bring into
question the trial court's power to proceed. [Footnote omitted]. Along the same
lines, we have found that a pretrial writ application is not appropriate when resolution
of the question presented, even if resolved in favor of the applicant, would not result
in immediate release. . . . 
12. Ex parte Smith, No. PD-0616-04 (Tex.Cr.App., delivered October 19, 2005).
13. We also note that, even though it is possible that appellant is being prosecuted under the
wrong statute, his injury might nevertheless be somewhat remote. For example, in his aggravated
assault prosecution, it is conceivable that appellant could be acquitted of the aggravated assault
charge or convicted of only hazing were he to request and receive such an instruction from the trial
court. Under these circumstances, it would not even be necessary for an appellate court to address
appellant's in pari materia claim. See Cross, 69 S.W.3d at 814 (theory behind ripeness doctrine is
straightforward-if plaintiff's injury is not concrete and depends on contingent, remote, or
hypothetical facts, courts should avoid deciding the dispute). We express no opinion on the Cross
court's assertion that the ripeness doctrine is jurisdictional. See id.